UNITED STATES of America

v.

Terry Lee **KRZEMINSKI.**

No. 1:94–cr–29.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 8, 1995.

Quinton L. Ellis, Wagoner Ellis Kiefer, Fort Wayne, IN, for Terry Lee Krzeminski.

Asst. U.S. Atty., Tina Nommay, Fort Wayne, IN, for U.S.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendant's Motion to Suppress, filed on November 28, 1994. The court held a hearing on the Motion to Suppress on December 2, 1994, after which the court ordered both parties to file briefs. Defendant Krzeminski filed his Memorandum in Support of the Motion on December 22, 1994; the Government filed its Memorandum in Opposition to the Defendant's Motion on December 23, 1994; and on January 3, 1995, the Government filed its Response to Krzeminski's Memorandum in Support of the Motion. The Defendant's Motion is Suppress is hereby DENIED.

## FACTS

On November 25, 1993, Deputy Sheriff Arthur J. Carpenter and Deputy Sheriff Randy D. Albright of the Steuben County Sheriff's Department were working the third shift: 10:00 p.m. to 6:30 a.m. The officers were patrolling in separate vehicles. At approximately 4:18 a.m., they received a dispatch call informing them of an incident that was taking place at 240 Shavers Court. The call reported that an intoxicated person was refusing to leave the residence and was causing problems.[1]

Deputy Carpenter proceeded to the Shavers Court address; en route, the dispatcher relayed the contents of a second call from 240 Shavers Court. The dispatcher informed the officers that the person causing the problems had left the residence with another man in an older gray Chevrolet truck. The dis-patcher reported that the complainant had stated that the suspect was "very intoxicated."

As Deputy Albright was driving toward Shavers Court, he thought he saw the gray truck pass him. He then radioed Deputy Carpenter and informed him that he may have seen the gray truck and that he was going to turn around and catch up with the truck. Shortly thereafter, Deputy Albright radioed Deputy Carpenter and told him that the truck had turned on 675 and was going south.

As Deputy Carpenter turned south on 675, the truck was about mile ahead of him. When Deputy Carpenter approached the truck, it was stopped in the middle of the road, the inside dome light was on, and two men were leaning over towards the center of the cab of the truck. As Deputy Carpenter got closer to the vehicle, it began to drive south on 675 again. Deputy Carpenter advised Deputy Albright that the car was proceeding south. After driving for less than a mile, the truck turned into a driveway and then pulled off into a grassy area and came to a stop.

Deputy Carpenter pulled behind the truck, turned on his flashing lights, put his spotlight on the truck, and got out of his vehicle. Deputy Carpenter testified that he was not blocking the truck and that it could have left the area had it chosen to do so. Deputy Carpenter also stated that he did not turn on his sirens at this time, and, in fact, did not turn on his lights or sirens at any time *before* the truck pulled off the roadway and came to a halt. As Deputy Carpenter approached the truck, it appeared to him that the occupants were doing something, so he told them to put their hands on the dashboard.

Deputy Carpenter walked to the driver's side of the truck whereupon the driver rolled the window down. At this point, Deputy Carpenter noticed that a strong odor of alcohol was coming from the truck and that the driver's eyes were bloodshot. He then removed the driver from the truck and placed his hands on the bed of the truck. During this time, it appeared to Deputy Carpenter that the passenger had taken his hands off

---

1. Deputy Albright interpreted the dispatch as reporting the possibility of a physical altercation, while Deputy Carpenter believed that the altercation was verbal.

the dashboard and was doing something in his lap, so he told the passenger to keep his hands on the dashboard. Deputy Carpenter placed the driver under arrest for public intoxication. Deputy Carpenter's gun was not drawn during the incident.

By this time, Deputy Albright had arrived on the scene and was approaching the passenger's side of the truck. Deputy Albright took his flashlight and swept up the right side of the truck as he approached the passenger's side. His flashlight caught the gleam of something protruding from the passenger's door. Upon realizing that the gleam was caused by a gun barrel, Deputy Albright advised the passenger not to move his hands. The gun was sitting across the passenger's lap. Deputy Albright reached across the passenger and pulled the gun out of the truck. At this point, Deputy Albright removed the subject from the truck and placed him on the ground in handcuffs. Upon removing the subject's wallet, Deputy Albright identified him as Terry Lee Krzeminski ("Krzeminski"), the defendant in this case.

Deputy Albright then placed Krzeminski under arrest for public intoxication based on a "very strong odor of alcohol on him" and the fact that "there was not a logical reason for him to have a weapon in that position." Further, Deputy Albright described Krzeminski's attitude at the time of the arrest as "aggravated." When Deputy Albright subsequently searched the cab of the truck, he found on the floorboard where Krzeminski sat a box of .22 magnum rounds and three loose rounds. Krzeminski was subsequently charged with violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon.

The Defendant moves this court to suppress evidence obtained from the stop and search of the gray truck, claiming that the stop and search were conducted in violation of the Fourth Amendment.

## ANALYSIS

1. *The initial contact between Deputy Carpenter and the occupants of the truck was not a "seizure" for purposes of the Fourth Amendment.*

■ The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Not every encounter between a police officer and a citizen amounts to a seizure, and there is no foundation for invoking the Fourth Amendment if no seizure has occurred. *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980). As the Seventh Circuit has noted, there are three categories of police/citizen encounters:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe that a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through noncoercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

*United States v. Johnson,* 910 F.2d 1506, 1508 (7th Cir.1990).

The Defendant claims that he was seized by the arresting officers and cites *Brower v. Inyo County,* 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989), for the proposition that activation of a marked law enforcement vehicle's overhead lights is a direct application of police authority designed to restrict the vehicle's freedom of movement. The Government asserts that while the officer's activation of lights may be a factor in some cases in determining whether, under the totality of the circumstances, a person feels free to leave, in the present case, Carpenter's activation of his lights did not amount to a seizure.

■ "A police intervention may be a seizure if, 'taking into account all of the circumstances surrounding the encounter,' the po-

lice conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostwick,* 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991); *United States v. Packer,* 15 F.3d 654, 657 (7th Cir.1994); *McGann v. Northeast Illinois Regional Commuter R.R. Corp.,* 8 F.3d 1174, 1185 (7th Cir.1993).

> The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

*Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). Factors relevant to this determination, include, but are not limited to, the following: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *McGann,* 8 F.3d at 1185 (quoting *Mendenhall,* 446 U.S. at 554–55, 100 S.Ct. at 1876–77 (1980)). However, "[i]f officers stop individuals and seek their voluntary cooperation through noncoercive questioning, ... the encounter is not a seizure under the Fourth Amendment." *United States v. Robinson,* 30 F.3d 774, 782 (7th Cir.1994).

■ When Deputy Carpenter first pulled behind the stopped gray truck and activated his lights, there was not a "seizure" and the Fourth Amendment was not implicated. The gray truck had stopped of its own volition after it pulled off the road. Deputy Carpenter merely pulled behind the truck after. it had stopped and then turned on his lights.[2] He had not activated his lights or sirens prior to this time. Deputy Carpenter was the only officer present at this time, and he did not draw his gun. Deputy Carpenter stated that the truck was not blocked by his car and would have been able to leave the scene.

Additionally, Deputy Carpenter repeatedly testified that his purpose in following the truck was to inquire about the 911 call that had been reported to him by the dispatcher. Carpenter stated that he was not pursuing an arrest of Krzeminski, but wanted to "identify who was involved in the altercation" at Shavers Court. His objective was to "arrive at the scene and take the information and try to resolve the matters." Deputy Albright also stated that his purpose in catching up to the gray truck was to identify who was involved in the altercation at Shavers Court in case charges were filed as a result of the incident.

Thus, viewing the totality of the circumstances, the initial contact between Officer Carpenter and the occupants of the truck falls within the third category of police/citizen contact described in *Johnson,* "characterized by an officer seeking the citizen's voluntary cooperation through noncoercive questioning," 910 F.2d at 1508, and for which the Fourth Amendment is not implicated.

■ While the initial contact between the officers and the defendant did not constitute a "seizure," even if this contact was

---

**2.** While this court recognizes that activation of police lights can be a factor in determining whether or not a "seizure" has taken place, *see Michigan v. Chesternut,* 486 U.S. 567, 575, 108 S.Ct. 1975, 1979–80, 100 L.Ed.2d 565, when considering the totality of the circumstances in the present case, the police conduct would *not* have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. The Defendant cites *Brower v. Inyo County,* 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989), for the proposition that activation of a police officer's overhead lights is a direct application of police authority designed to restrict the vehicle's freedom of movement. However, while the case does discuss the situation in which "[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit," the holding of the case was that a driver of a stolen car who was attempting to elude police was "seized" for purposes of the Fourth Amendment when police officers placed an 18–wheel truck completely across the highway in the path of the driver. *Brower,* 489 U.S. at 599, 109 S.Ct. at 1382. Further, the situation described in *Brower,* that of continuing police pursuit and flashing lights, is not analogous to the case at hand.

considered a "seizure," the officers met the requirements of the Fourth Amendment in that they had a "reasonable suspicion." "Before a *Terry* stop can provide admissible evidence, law enforcement officers 'must be able to point to specific and articulable facts' sufficient to give rise to a reasonable suspicion that an individual has committed or is committing a crime." *Packer*, 15 F.3d at 657; *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *McGann*, 8 F.3d at 1186. In deciding whether a police officer's suspicion was reasonable, the Seventh Circuit applies a totality of the circumstances test. *Packer*, 15 F.3d at 657.

> Investigatory stops of vehicles must be supported by "a particularized and objective basis for suspecting" criminal conduct. This can be supplied on the basis of a 911 call alone if it has sufficient indicia of reliability. *See Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If so, a dispatcher may alert other officers by radio, who may then rely on the report, *see Whitely v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971), even though they cannot vouch for it.

*United States v. Cutchin*, 956 F.2d 1216 (D.C.Cir.1992).

When considering the totality of the circumstances, Deputy Carpenter and Deputy Albright clearly had a "reasonable suspicion" that Krzeminski had been or was currently engaged in wrongdoing. The officers noted several specific and articulable facts that led to this suspicion: (1) the dispatcher's report, based on a 911 call, that an altercation (interpreted by Deputy Albright as possibly physical) had taken place at Shavers Court; (2) the dispatcher's statement that the instigator had just left the residence in a gray truck; (3) information from the dispatcher that this person was very intoxicated; (4) Deputy Albright's identification of a vehicle fitting the description of the gray truck; (5) Deputy Carpenter witnessing the gray truck stopped in the middle of the road, with its dome light on, and with two individuals leaning toward the center of the truck's cab; (6) the fact that when Deputy Carpenter's car approached, the truck began to move again; (7) that

about a mile later the truck turned onto a driveway and pulled off into the grass and stopped; and (8) that these events took place between 4:00 and 5:00 a.m.

Thus, the officers gave "a rational explanation for why they suspected the person[s] they stopped." *United States v. Feliciano*, 45 F.3d 1070 (7th Cir.1995). Deputy Carpenter and Deputy Albright possessed a "reasonable suspicion supported by articulable facts," and their actions were consistent with the Fourth Amendment.

2. *Krzeminski was "seized" when Deputy Albright removed him from the truck and handcuffed him; however, the seizure was reasonable and did not violate the Fourth Amendment.*

While Deputy Carpenter was handling the situation with the driver and reminding the passenger to keep his hands on the dashboard, Deputy Albright arrived on the scene. He scanned the passenger's side of the truck with his flashlight and picked up an object's gleam. He discovered that this was the gleam of a gun barrel, which belonged to a gun that the passenger (Krzeminski) was holding in his lap. Deputy Albright pulled the gun out of the truck, removed Krzeminski from the truck, and placed him on the ground in handcuffs.

At this point, and not before, Krzeminski had been "seized" for purposes of the Fourth Amendment. The consensual encounter had been transformed into a *Terry* stop. In *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880, the Supreme Court laid out the test to be used in determining whether investigative stops violate the Fourth Amendment:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.... [I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure ... "warrant a man of reasonable caution in the belief" that the action taken was appropriate? ... Simple good

faith on the part of the arresting officer is not enough.

*Id.*

The reasonableness of an investigatory stop is determined by examining whether the police were aware of specific and articulable facts giving rise to a reasonable suspicion and whether the degree of intrusion was reasonably related to the known facts. *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994). "If a *Terry* stop based on reasonable suspicion continues too long or becomes unreasonably intrusive, it ripens into a de facto arrest that must be based on probable cause." *Robinson,* 30 F.3d at 784. Officers are justified in taking reasonable steps to ensure their personal safety so long as they possess "an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Michigan v. Long,* 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983); *United States v. Evans,* 994 F.2d 317, 319 (7th Cir.1993). It is permissible in some *Terry* stops to require the suspect to leave a car and may be acceptable to make him lie prone on the ground without transforming the stop into an arrest. *Tilmon,* 19 F.3d at 1226–27. "When a suspect is considered dangerous, requiring him to lie face down on the ground is the safest way for police officers to approach him." *Id.* at 1228. Further, handcuffing does not automatically transform an investigatory stop into an arrest. *Id.; Robinson,* 30 F.3d at 782; *United States v. Smith,* 3 F.3d 1088, 1094 (7th Cir.1993).

Given the totality of the circumstances, Deputy Albright had a "reasonable suspicion" when, after receiving notice of a 911 call reporting a possible physical altercation, he came upon the vehicle which was supposedly carrying the person involved in this altercation, witnessed Deputy Carpenter arresting the driver of the truck, and saw Krzeminski cradling a firearm in his lap. Further, the stop was reasonable in both length and scope. Deputy Albright possessed an articulable and reasonable belief

that the suspect was dangerous, and he was justified in taking reasonable steps to ensure his safety. *See Michigan v. Long,* 463 U.S. at 1051, 103 S.Ct. at 3481. Handcuffing Krzeminski and having him lay on the ground was also reasonable in light of the fact that Deputy Albright had found a gun in Krzeminski's lap. The entire encounter, between the time Deputy Carpenter pulled behind the truck and the time the arrests were completed, lasted only approximately ten (10) minutes. Thus, the seizure was reasonable because the officers "were aware of specific and articulable facts giving rise to a reasonable suspicion" and "the degree of intrusion was reasonably related to the known facts." *See Tilmon,* 19 F.3d at 1224.

3. *Krzeminski's arrest was supported by probable cause.*

The defendant makes a summary argument that his arrest is not valid because the arresting officers "had no warrant" and "did not witness the commission of a misdemeanor offense on the day and time in question." (Defendant's Brief in Support of the Motion to Suppress, p. 3.) (citing I.C. § 35–33–1–1 *et seq.*[3]) The defendant states that "[t]he only information possessed by the arresting officers as related to them via dispatch indicated that a verbal argument had transpired and the individual involved in the incident had voluntarily left, and also, that said individual might be intoxicated." *Id.* at 3, 4. Thus, Krzeminski appears to be arguing that the officers did not have probable cause to arrest him for events that may have occurred at Shavers Court.

Yet the offense for which Deputy Albright arrested Krzeminski was public intoxication. This offense, which was committed in Deputy Albright's presence, consists of the following factors: (1) being in a public place; (2) in a state of intoxication. I.C. § 7.1–5–1–3. Krzeminski's encounter with the police escalated into an arrest supported by probable cause immediately after he was handcuffed because Deputy Albright discov-

---

**3.** This statute delineates the situations in which a law enforcement officer may arrest a person. I.C. § 35–33–1–1(a)(4) provides that "a law enforcement officer may arrest a person when the officer has probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence."

ered that Krzeminski was intoxicated and arrested him for public intoxication.[4]

Deputy Albright determined that Krzeminski was intoxicated because he noticed a very strong odor of alcohol, Krzeminski acted in an "aggravated" manner, and the deputy thought that "there was not a logical reason for him to have a weapon in that position." (Transcript of Hearing on Motion to Suppress, p. 53.) In addition, Deputy Albright had been put on notice by the dispatcher that at least one occupant of the truck was "very intoxicated." Thus, based on the totality of the circumstances, Deputy Albright had probable cause to arrest Krzeminski for public intoxication.[5] *See, e.g., Price v. State,* 600 N.E.2d 103, 116 (Ind.App.1992) (finding probable cause for public intoxication arrest where woman's words were slurred, she had a strong odor of alcohol on her breath, she admitted to drinking beer earlier that evening, and the officer testified that she was intoxicated); *Porter v. State,* 271 Ind. 180, 391 N.E.2d 801, 807 (1979) (holding that arrest for public intoxication was appropriate where the person smelled of alcohol, appeared and acted unstable, had appearance of intoxication, and was uncooperative and hostile toward police officers); *Hirsch v. Burke,* 40 F.3d 900, 903 (7th Cir.1994) (concluding that there was probable cause for public intoxication arrest where man had trouble balancing himself, appeared incoherent, smelled of alcohol, had bloodshot eyes, and was unable to state his name or date of birth).

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is DENIED.

---

**4.** *See Robinson,* 30 F.3d at 782, n. 3 ("[W]e agree with the district court's ruling that Robinson's encounter with the police escalated into an arrest supported by probable cause the moment he was handcuffed after Officer Brown's discovery of the cocaine base lying in the snow.").

**5.** As the government noted, in defendant's initial motion to suppress and accompanying brief, he appeared only to challenge the basis for the initial "stop," and not the basis for the subsequent arrest. Thus, during the hearing, extensive testimony was not elicited on the issue of Krzeminski's arrest for public intoxication. Nonetheless, sufficient facts do exist in the record to support a finding of probable cause for the arrest.