# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jul 18 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANNETTE PITTMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1112-CR-1132 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Evan Goodman, Judge
Cause No. 49F10-1105-CM-32189

**July 18, 2012**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Annette Pittman appeals her conviction of Public Intoxication,[1] a class B misdemeanor, challenging the sufficiency of the evidence as the sole issue on appeal.

We affirm.

The facts favorable to the conviction are that, at approximately 3 a.m. on May 7, 2011, Officer Ivalee Craney of the Indianapolis Metropolitan Police Department responded to a report of trouble at a gas station on Washington Street in Indianapolis. Upon arrival, the officer was informed by the attendant that a woman, later identified as Pittman, had appeared at the gas station and asked to use the station's telephone. When permission was denied, Pittman refused to leave the station despite being asked several times to do so. When Officer Craney approached Pittman, she noted that Pittman's speech was slurred, she exhibited "unsteady balance" and "swaying", *Transcript* at 8 and 10, respectively, and the officer smelled the strong odor of alcohol on Pittman's breath. Officer Craney spoke with Pittman for several minutes in an attempt to resolve the situation, but when Pittman refused to leave the station and acted in a manner that the officer described as "not pleasant," Pittman was placed under arrest for public intoxication. *Id*. at 11. Officer Craney arranged to have Pittman transported to the county jail. Pittman was found guilty as charged following a bench trial and sentenced to 180 days, all but 2 of which was suspended to probation.

Pittman contends the evidence was not sufficient to sustain her conviction of public intoxication. Specifically, Pittman contends "the State failed to follow the requirements of

---

[1]  Ind. Code Ann. § 7.1-5-1-3 (West, Westlaw through legislation effective May 31, 2012).

Ind. Code 12-23-15-2 to have the defendant evaluated for nonalcoholic factors that may have contributed to her appearance of intoxication." *Appellant's Brief* at 1.

Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When considering a challenge to the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011).

Ind. Code Ann. § 12-23-15-2 (West, Westlaw through legislation effective May 31, 2012) states: "An individual to be taken to the city lock-up or county jail shall be evaluated at the earliest possible time for nonalcoholic factors that may be contributing to the appearance of intoxication." The State offered no evidence, through Officer Craney's testimony or otherwise, as to what occurred after Pittman was delivered to the jail. Pittman's conviction is based entirely upon evidence of what Officer Craney observed of Pittman's behavior and condition at the scene of the incident. Pittman contends that I.C. § 12-23-15-2 requires more. She contends that it "imposes a duty on the police to have persons arrested for public intoxication evaluated to determine if there are reasons other than alcohol that the person would be exhibiting signs of intoxication." *Appellant's Brief* at 3-4.

3

Our research reveals no cases discussing I.C. § 12-23-15-2, and only three cases mentioning its predecessor, I.C. § 16-13-6.1-32(c)[2] (repealed by P.L. 2-1992, § 87). Only one of those cases sheds light on the purpose of I.C. § 12-23-15-2, and that one provides scant little. In *Parker v. State*, 530 N.E.2d 128 (Ind. Ct. App. 1988), the defendant appealed his conviction of operating a vehicle while intoxicated on ground that the evidence was insufficient. Among other things, the defendant argued that his constitutional rights were violated when police refused his request to administer a chemical sobriety test. The State noted that during the same encounter, the defendant had twice refused to submit to a chemical sobriety test before eventually asking the officers to administer one. The court held that the defendant ran afoul of Indiana's Implied Consent Law when he initially refused a test, and that "in order to comply with the Implied Consent Law,[3] a person must submit to the chemical test when it is offered by the law enforcement officer." *Id*. at 131. In the context of that discussion, the court stated:

> Nor does IC 16-13-6.1-32(c) (1982) mandate the State to provide a chemical sobriety test for Parker. IC 16-13-6.1-32(c) merely provides that "[a]ny person to be taken to the city lockup or county jail shall be evaluated at the earliest possible time for *nonalcoholic factors* which may be contributing to the appearance of intoxication." (Emphasis supplied). The statute neither requires a chemical test nor is the purpose of the statute to provide exculpatory evidence for a defendant. A motorist cannot manipulate these statutes to permit him to take a chemical sobriety test when he thinks it will be most favorable for him to do so.

*Id*.

---

[2] That provision stated: "Any person to be taken to the city lock-up or county jail shall be evaluated at the earliest possible time for nonalcoholic factors which may be contributing to the appearance of intoxication."

The foregoing passage in *Parker* constitutes all of the guidance our previous decisions provide with respect to the purpose and application of the current I.C. § 12-23-15-2. Although it is not much, it reflects that this provision does not compel the State to administer a chemical sobriety test, or, by explication, any other particular kind of test. What it does require is an "evaluation" for possible alternate causes (i.e., other than consumption of alcohol) for behavior that evinces intoxication and for which the subject will otherwise be transported to jail. Pittman's argument assumes that this evaluation must necessarily consist of medical or scientific testing. We cannot agree with the premise.

The term "evaluation" does not connote testing, but instead conveys something more general – a determination of the condition of something by careful appraisal or study. If we construed the statute as Pittman urges, i.e., as requiring the administering of chemical or medical tests for the purpose of discovering whether nonalcoholic factors might be the cause of the behavior in question, then we would be saddling the State with the near-impossible task of proving a negative. It would be tantamount to forcing the State to *disprove* that the subject's behavior was caused by anything other than ingestion of alcohol. For example, a medical test would be required to prove that the subject had not suffered a hypoglycemic attack, or a seizure, or a stroke, or had experienced a severe or adverse reaction to prescription medication, or had sustained a concussion – and so on. The futility of embarking on such a quest is obvious and surely was not what the legislature intended. We conclude instead that the statute means what it says – having observed what appear to be

---

[3]  *See* Ind. Code Ann. § 9-30-6 *et seq.* (West, Westlaw through legislation effective May 31, 2012).

5

behavioral symptoms of alcohol intoxication, attending officers must evaluate the situation and the person as soon as is practicable to determine whether the suspect behavior has an innocent cause. This may or may not require, for example, a blood test or a physical examination. The circumstances will dictate what a reasonable evaluation entails, and most especially whether it entails the administering of medical or chemical tests.

In the present case, Officer Craney observed that Pittman's speech was slurred and she was unsteady on her feet. Pittman was belligerent and uncooperative. When she came close enough to Pittman, Officer Craney noted that Pittman's breath "smelled strongly" of alcohol. *Transcript* at 8. Under these circumstances, the detection of the strong smell of alcohol on Pittman's breath obviated the need to perform any further evaluation. The detection of that odor, coupled with her observation of Pittman's other behaviors, in light of the totality of the circumstances then known to Officer Craney, satisfied the statute's requirements. Put another way, I.C. § 12-23-15-2 did not require Officer Craney, or other law enforcement personnel elsewhere, to perform an evaluation so thorough as to eliminate all other possible causes for each of the symptoms of alcoholic intoxication that Pittman exhibited. Although we can envision scenarios that would warrant further evaluation, including but not limited to those involving behavior reasonably suggestive of mental illness or dementia, this was not one of them. The dictates of I.C. § 12-23-15-2 were satisfied. This being Pittman's only challenge to the sufficiency of the evidence, the challenge fails.

Judgment affirmed.

MAY, J., and BARNES, J., concur.