In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2934

MIGUEL GUTIERREZ,

*Plaintiff-Appellee,*

*v.*

MICHAEL R. KERMON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-0185-TWP-DML—**Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 17, 2013—DECIDED JULY 12, 2013

Before MANION and TINDER, *Circuit Judges,* and LEE, *District Judge.*[*]

TINDER, *Circuit Judge.* Miguel Gutierrez brought this action under 42 U.S.C. § 1983 against Indianapolis Metropolitan Police Officer Michael R. Kermon (and others not involved in this appeal), alleging, among other things, that

---

[*] The Honorable John Z. Lee of the Northern District of Illinois, sitting by designation.

Kermon trampled his fourth amendment rights by seizing him without reasonable suspicion or probable cause. Officer Kermon moved for summary judgment, arguing that he had not violated Gutierrez's rights or, if he had, that he was nevertheless entitled to qualified immunity. The district judge concluded that Kermon had reasonable suspicion to make an investigative detention but that genuine issues of material fact precluded a finding of qualified immunity on the issue of probable cause. Officer Kermon brought this interlocutory appeal challenging the district court's denial of qualified immunity on the issue of probable cause. Because Kermon's argument depends on a disputed fact, we dismiss this appeal for want of jurisdiction.

**I**

The parties agree that shortly before 10 p.m. on March 8, 2009, Officer Kermon arrested Gutierrez and charged him with public intoxication and resisting arrest under Indiana law, but they offer drastically different narratives concerning almost all other events of that evening. According to Gutierrez, he was walking home from work, minding his own business, when Officer Kermon, who never identified himself as a police officer, stopped him at gunpoint, pepper sprayed him, placed him in handcuffs, delivered a few gratuitous kicks to his torso, and directed a racially derogatory comment at him. Officer Kermon, on the other hand, says that Gutierrez was a belligerent drunkard who was unsteady on his feet, yelled at Kermon, assumed an aggressive fighting stance

as Kermon approached to ask him a question, and then actively resisted being placed in handcuffs. Notwithstanding these drastically different accounts, given the posture of this appeal, we must view the facts as assumed by the district court when it denied summary judgment or as asserted by Gutierrez, the nonmovant. *See, e.g., White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007).

Around 9:30 p.m. on the night of the arrest, Gutierrez, a commercial truck driver, began walking toward his home after completing maintenance work on his truck. *See* Appellee's App. at 74, 126, 128, 130. Gutierrez was wearing his dirty work clothes, had a somewhat disheveled appearance, and had irritated eyes due to contact with debris as he worked. *Id.* at 37, 85, 114. It was dark outside and Gutierrez lived in a dangerous, high-crime area, so before setting off toward home he armed himself with a golf club to fend off potential muggers. *Id.* at 19, 25.

Meanwhile, around 9:40 p.m., Officer Kermon responded to a dispatch report that two African-American men were chasing and trying to fight a third individual in front of a house in Gutierrez's neighborhood. *Id.* at 113, 116. Kermon approached the house in his marked squad car, creeping slowly down the street with his headlights off because he was unsure of what dangers, if any, were lurking, and at some point he observed Gutierrez walking on the sidewalk near the entryway of the house. *Id.* at 24, 29-30, 79, 81, 113, 116; Appellant's Supp. App. at 47-48, 62-63.

Gutierrez observed a vehicle (not Kermon's) with its headlights on parked along the west side of the street

facing him, and to avoid any potential trouble he decided to cross over to the east side of the street. *Id.* at 17-23, 25. As he crossed the street, Gutierrez observed a car creeping slowing toward him, at which point he paused, turned around, and returned to the sidewalk on the west side of the street. *Id.* at 22-25. Unbeknownst to Gutierrez, the car he had observed approaching was Officer Kermon's squad car; Gutierrez could not see that the car was a police car because it was dark outside, the squad car's headlights were off, and a row of cars parked along the street partially obstructed his view. *Id.* at 17-18, 21-25.

The following events unfolded rapidly. Officer Kermon could tell that Gutierrez was not African-American, hence not one of the two suspected assailants mentioned in the dispatch report, but believing that Gutierrez may have been the *victim* of the reported incident, Kermon stopped his car, exited, and yelled out to Gutierrez, "Hey, you, stop right there! Hey, you, stop!" *Id.* at 26, 83, 113, 116; Appellant's Supp. App. at 64-65. Though he heard these statements, Gutierrez continued walking because he did not recognize the voice and did not know Kermon was a police officer (it is undisputed that Kermon never identified himself as such and never activated the emergency lights on his squad car). Appellee's App. at 26-27, 33-34. Officer Kermon began approaching Gutierrez, at which point he observed that Gutierrez's clothes were dirty and disheveled, that his hair was in disarray (or as Kermon described it, "not neatly combed"), that he appeared agitated, and that he was carrying a golf club. Appellant's Supp. App. at 66-67. (Officer Kermon

testified that Gutierrez was animated and aggressive and also that he was swaying and unsteady, *id.* at 66-67, 93, but Gutierrez denies this.)

Because Gutierrez had not complied with his commands, Officer Kermon unholstered his gun, ran in front of Gutierrez, and stopped him at gunpoint while shining a flashlight in his face. *Id.* at 44-46, 48-49, 67-69; Appellee's App. at 26-27, 30-31, 87-88. Officer Kermon ordered Gutierrez to get on the ground, to raise his hands, and to drop the golf club. Appellee's App. at 27, 32-33, 114, 116. Gutierrez, still not aware that he was being confronted by a police officer, initially hesitated. *Id.* at 27-35. But then Officer Kermon lowered his flashlight and Gutierrez finally caught a glimpse of Kermon's badge and uniform; Gutierrez immediately discarded the golf club. *Id.* at 28-30; Appellant's Supp. App. at 46-49. As Gutierrez tossed the golf club aside, he began pointing toward his house and saying, "Hey, what's going on? I live right there." Appellee's App. at 28. But before Gutierrez could say anything else, Officer Kermon sprayed him in the face with pepper spray. *Id.* at 28-30. It was also around this time, after the golf club had been discarded but before the pepper spray had been deployed, that Kermon observed that Gutierrez's eyes were red and glossy. *See id.* at 88-89.

Gutierrez was handcuffed with the help of a second officer that had arrived on scene. *Id.* at 38-42. Officer Kermon then gratuitously kicked Gutierrez in the abdomen twice, and when Gutierrez asked whether Kermon could get away with it, Officer Kermon allegedly

said, "Of course, I can do whatever I want to you, you filthy Mexican." *Id.* at 42-46, 49-50. Gutierrez was then taken to jail and charged with public intoxication and resisting arrest.

The charges were ultimately dropped after a state magistrate judge ruled that the initial stop of Gutierrez had been unlawful. Gutierrez subsequently brought this action under 42 U.S.C. § 1983 against Officer Kermon and others (though this appeal concerns only Officer Kermon), asserting several federal and supplemental state-law claims. As relevant here, Gutierrez alleged that Officer Kermon violated the Fourth Amendment by seizing him without reasonable suspicion in violation of *Terry v. Ohio*, 392 U.S. 1 (1968) ("*Terry* claim"), and without probable cause ("false-arrest claim").

Officer Kermon moved for summary judgment on the grounds that he had not violated Gutierrez's rights and, at the very least, that he was entitled to qualified immunity. The district court granted the motion in part and denied it in part. *Gutierrez v. City of Indianapolis*, 886 F. Supp. 2d 984, 1001 (S.D. Ind. 2012). The court granted summary judgment for Officer Kermon on Gutierrez's *Terry* claim, concluding that Kermon had reasonable suspicion to make an investigative stop because, from his viewpoint, Gutierrez was carrying a golf club, appeared agitated, refused to obey Kermon's commands, and was near the residence to which Officer Kermon had

been dispatched.[1] *Id.* at 993-94. Officer Kermon argued

---

[1] Although it concluded that the initial seizure was justified by reasonable suspicion, the district court did not consider whether the initial seizure was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Even if reasonable suspicion exists, if an officer uses unreasonably intrusive means to effectuate a seizure it may be deemed a de facto arrest requiring probable cause, rather than an investigative detention under *Terry*. *See, e.g.*, *Dunaway v. New York*, 442 U.S. 200, 208-14 (1979); *United States v. Ienco*, 182 F.3d 517, 523-24 (7th Cir. 1999); *United States v. Novak*, 870 F.2d 1345, 1351-53 (7th Cir. 1989) (stopping suspects, neither of whom were believed to be armed and dangerous, at gunpoint exceeded bounds of *Terry* and amounted to full-fledged arrest); *cf. Ramos v. City of Chicago*, No. 10-3425, 2013 WL 2264346, at *4 (7th Cir. May 24, 2013) ("The proliferation of cases in this court in which '*Terry*' stops involve handcuffs and ever-increasing wait times in police vehicles is disturbing, and we would caution law enforcement officers that the acceptability of handcuffs in some cases does not signal that the restraint is not a significant consideration in determining the nature of the stop."). The fact that Gutierrez brought a claim of false arrest in addition to his *Terry* claim does not necessarily render this an irrelevant point. The viability of a false-arrest claim turns on whether there was probable cause to justify the arrest, *see, e.g.*, *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013), and the existence of probable cause depends in large part on the facts and circumstances known to the officer at the time of arrest, *see Ornelas v. United States*, 517 U.S. 690, 696 (1996). Here, it appears that certain observations were made after the

(continued...)

that he also had probable cause to arrest for public intoxication because, at the time of the arrest, he had observed that Gutierrez had red eyes, had a disheveled appearance, and was swaying and having trouble maintaining his balance. *Id.* at 994. The district court, though, found that it could not make a finding of probable cause because Gutierrez denied swaying or shifting his weight, did not smell of alcohol, and had not had time to explain his disheveled appearance and red eyes, as he had been sprayed immediately with pepper spray. *Id.* The court went on to conclude that these factual disputes also precluded a finding of qualified immunity. *Id.* at 995. Officer Kermon appeals the denial of qualified immunity on the false-arrest claim. (Other claims remain pending before the district court awaiting trial, including an excessive-force claim and an equal protection claim.)

## II

The Fourth Amendment prohibits unreasonable seizures. To be deemed reasonable, a warrantless arrest made in public must be supported by probable cause, *United States v. Watson*, 423 U.S. 411, 414-24 (1976), and so the

---

[1] (...continued)
initial seizure, which means that *if* the initial seizure was the arrest, and not merely an investigatory detention, then those observations would not factor into the probable-cause inquiry. Given our disposition of this appeal, we need not address these issues.

existence of probable cause is an absolute defense to a § 1983 claim for false arrest, *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). (The existence of probable cause is necessary but not sufficient for an arrest to be reasonable; the reasonableness of an arrest depends both on its justification and the manner in which it was effectuated. *See Tennessee v. Garner*, 471 U.S. 1, 8 (1985).) Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013); *see also Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003). It is a practical, commonsense standard that requires only the type of fair probability on which reasonable people act. *See Florida v. Harris*, 133 S. Ct. 1050, 1055-56 (2013); *Hanson v. Dane County, Wis.*, 608 F.3d 335, 338 (7th Cir. 2010).

Based as it is on probabilities rather than hard certainties, the probable-cause standard inherently allows room for reasonable mistakes. *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Qualified immunity affords an even greater level of protection by shielding officers from "suit for damages if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (second alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see also, e.g., Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects govern-

ment officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). In this context, qualified immunity provides shelter for officers who have "arguable probable cause" to arrest—i.e., those officers that reasonably but mistakenly believe they have probable cause. *See Abbott*, 705 F.3d at 714-15, 723-24; *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Though they may appear to be the same, the probable-cause and arguable-probable-cause inquiries are different. *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 880 (7th Cir. 2012). An arrest without probable cause is a violation of a constitutional right, whereas an arrest without *arguable* probable cause is a violation of a "clearly established" constitutional right. *See Hunter*, 502 U.S. at 227; *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012).

Officer Kermon contends that the district court erred in denying summary judgment on his defense of qualified immunity with regard to Gutierrez's false-arrest claim. He concedes that many factual disputes exist, but he argues that there are six "undisputed" facts that entitle him to qualified immunity notwithstanding the chaotic state of the record. Those six facts are (1) Gutierrez's unsteady gait; (2) his dirty, disheveled appearance; (3) his possession of a golf club; (4) his apparent agitation; (5) his lack of cooperation; and (6) his red, watery eyes. Officer Kermon maintains that, on the basis of these six facts, a reasonable person in his

position reasonably, even if mistakenly, could have believed that there was probable cause to arrest Gutierrez for committing the crime of public intoxication under Indiana law, *see* Ind. Code § 7.1-5-1-3. We are unable to reach the merits of Kermon's argument because we lack jurisdiction over this interlocutory appeal.

As a general matter, the denial of summary judgment is not appealable because it is not a "final decision" for purposes of 28 U.S.C. § 1291. *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011). But an order denying qualified immunity on summary judgment often is immediately appealable on the basis that it is a final decision on the defendant's right not to stand trial and, as such, a collateral order. *Mitchell v. Forsyth*, 472 U.S. 511, 524-30 (1985); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (describing narrow class of collateral orders). This is so even though the defendant will be required to go to trial on other claims, for the "right to immunity is a right to immunity from certain claims, not from litigation in general." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (emphasis omitted). That said, we do not have jurisdiction to review an order denying qualified immunity on summary judgment if the issue on appeal is whether the record contains sufficient evidence to create a "genuine" issue of material fact. *See Johnson v. Jones*, 515 U.S. 304, 313-20 (1995); *see also Elliott v. Thomas*, 937 F.2d 338, 341-43 (7th Cir. 1991) (no jurisdiction over appeal in which officers simply denied that they injured the plaintiff).

Gutierrez argues that, under *Johnson*, we lack jurisdiction over this appeal *because* the district court denied

summary judgment on the basis that there are genuine factual disputes between the parties. Gutierrez over-reads *Johnson*. A district court's finding that there are genuine issues of material fact "does not always preclude appellate review." *Sallenger v. Oakes*, 473 F.3d 731, 738 (7th Cir. 2007). The Supreme Court has explained that the "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable. *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case . . . ." *Behrens*, 516 U.S. at 312-13 (internal citation omitted). Thus, *Johnson* prohibits us from reviewing "the record to determine whether the district court erred in finding that a genuine issue of material fact exists," *Via v. LaGrand*, 469 F.3d 618, 624 (7th Cir. 2006), and so "we may not make conclusions about which facts the parties ultimately might be able to establish at trial," *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005). But *Johnson* does *not* prohibit us from considering the abstract legal question of whether a given set of undisputed facts demonstrates a violation of clearly established law. *Behrens*, 516 U.S. at 313; *Leaf*, 400 F.3d at 1078. In reviewing this purely legal question, we take the facts as the district court assumed them when denying summary judgment, *Johnson*, 515 U.S. at 319, or in a light most favorable to the plaintiff, the nonmovant, *Knox v. Smith*, 342 F.3d 651, 656 (7th Cir. 2003).

Officer Kermon argues that he is entitled to qualified immunity notwithstanding the many factual disputes identified by the district court. At first blush, Kermon's position appears to take this case outside the scope of *Johnson*. We are, however, troubled by Kermon's reliance on Gutierrez's allegedly unsteady gait as one of the purportedly "undisputed" facts. Gutierrez vehemently denies that he was unsteady, and he argues vociferously that the district court found this to be a genuine factual dispute. We agree with Gutierrez's characterization of the district court's order.

One of the reasons the district judge gave in support of her decision was that there is a factual dispute as to whether Gutierrez was swaying or unsteady on his feet. Officer Kermon says he is not challenging this conclusion, but he argues that there is undisputed evidence that Gutierrez walks with a limp due to a permanent leg injury suffered some time ago. And, according to Kermon, the district court found a factual dispute only as to whether Gutierrez was swaying *after* being stopped, not as to whether he walked with an unsteady gait *before* he was stopped. Yet a close reading of the district court's opinion indicates otherwise. The court explained, "Officer Kermon observed that Mr. Gutierrez . . . had an issue with balancing himself *as he walked*, giving the appearance that he swayed," but it found this to be disputed because Gutierrez "denie[d] that he was swaying or shifting his weight in front of Officer Kermon." 886 F. Supp. 2d at 994 (emphasis added). It is not apparent from this that the district judge drew the fine distinction Kermon urges, and we see nothing else in the

district court's opinion indicating that it assumed Gutierrez had been walking with an unsteady gait before being stopped. Indeed, the most natural reading of the quoted language is that the district court considered Kermon's argument on this point and rejected it.

Kermon fares no better if we presume for the sake of argument that the district court was simply silent on the issue, in which case we might have license to engage in a somewhat limited review of the record. *See Johnson*, 515 U.S. at 319 (where a district court does not clearly state the facts on which it bases its legal determination "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed"); *Washington v. Haupert*, 481 F.3d 543, 548-50 (7th Cir. 2007) (explaining that in certain circumstances it may be appropriate for an appellate court to examine all *undisputed* evidence in the record, even evidence not considered by the district court); *accord Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc); *Winfield v. Bass*, 106 F.3d 525, 534-35 (4th Cir. 1997) (en banc). While Gutierrez testified that he walks with a limp and occasionally requires a cane, Appellant's Supp. App. at 32, there is no indication as to how pronounced a limp he has or how severe it was on the night of the arrest (and that he *occasionally* requires a cane suggests that the severity of his limp varies). Kermon testified that he observed Gutierrez walking but did not say that Gutierrez walked unsteadily. *Id.* at 63, 65. Thus, to assume that Gutierrez walked with an unsteady gait *that night*

would require drawing an inference in Kermon's favor, when all inferences must be drawn in Gutierrez's favor, *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

So what does this mean for purposes of our jurisdiction? In accordance with *Johnson*, this court has held that an appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument. *See Viilo v. Eyre*, 547 F.3d 707, 712 (7th Cir. 2008); *see also Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011) ("In a collateral-order appeal . . ., where the defendants say that they accept the plaintiff's version of the facts, we will take them at their word and consider their legal arguments in that light. If, however, we detect a back-door effort to contest the facts, we will reject it and dismiss the appeal for want of jurisdiction."); *cf. Ne. Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 893 (7th Cir. 2013) (party asserting jurisdiction has burden of establishing it). Even if the appellant disclaims any attempt to challenge the district court's conclusion that genuine factual disputes exist, we lack jurisdiction when his argument on appeal depends upon and is inseparable from disputed facts. *See White v. Gerardot*, 509 F.3d 829, 835-36 (7th Cir. 2007); *McKinney v. Duplain*, 463 F.3d 679, 688-90 (7th Cir. 2006); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). This is so because one of the conditions for bringing an appeal under the collateral-order doctrine is that the appealed order must be separate from the merits of the case. *See Johnson*, 515 U.S. at 314; *Mitchell*, 472 U.S. at 527-29; *Levan*

*v. George*, 604 F.3d 366, 370 (7th Cir. 2010). Yet we also have acknowledged that the mere mention of disputed facts in an otherwise purely legal argument is not fatal, and we have held accordingly that jurisdiction exists where the appellant mentions factual disputes but the legal argument is not dependent on those factual disputes—i.e., where the legal and factual arguments are separable. *See White*, 509 F.3d at 836 ("[T]he key inquiry is whether the appellant's arguments necessarily depend upon disputed facts. If an argument is not dependent upon disputed facts, the court simply can disregard mention of the disputed facts and address the abstract issue of law without running afoul of *Johnson*."); *see also Sallenger*, 473 F.3d at 738-39 (appellate jurisdiction existed even where appellants raised factual issues toward the end of their brief).

The present case falls close to the hazy line between appealable and nonappealable orders established by *Johnson*. Kermon undoubtedly relies on a disputed fact throughout his argument, yet he also relies on other, undisputed facts. It might be argued that we should simply ignore the disputed fact and consider whether the truly undisputed facts establish that Kermon is entitled to qualified immunity. After all, there is no question that jurisdiction would be proper if Kermon had brought this appeal claiming that he was entitled to qualified immunity based solely on those five undisputed facts. But Kermon has based his argument on all six of the purportedly "undisputed" facts, claiming that all six of those facts considered together gave him arguable probable cause to arrest Gutierrez for public

intoxication; he has not argued that if Gutierrez's allegedly unsteady gait is indeed disputed he would nevertheless be entitled to qualified immunity.

Moreover, it is evident that Kermon's argument is entirely dependent on the disputed fact of Gutierrez's allegedly unsteady gait because the five remaining facts, which the district judge found to be truly undisputed, come nowhere close to establishing arguable probable cause. At the time of Gutierrez's arrest, Indiana Code section 7.1-5-1-3 provided that "[i]t is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol or a controlled substance (as defined in IC 35-48-1-9)." *Moore v. State*, 949 N.E.2d 343, 344 (Ind. 2011), *superseded by statute*, 2012 Ind. Legis. Serv. P.L. 117-2012, § 1. "Intoxication" essentially means that a person is under the influence of alcohol and/or a controlled substance to the extent that his thoughts or actions are impaired or that he has lost normal control of his faculties. *See* Ind. Code § 9-13-2-86[2]; *Curtis v.*

---

[2] The public-intoxication statute does not define "state of intoxication," but the Indiana Court of Appeals has borrowed the definition of intoxication from the operating-while-intoxicated statute, *see Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App.), *trans. denied*, 969 N.E.2d 86 (Ind. 2012); *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008), and we see no apparent reason to believe that the Indiana Supreme Court would disagree with this approach, *see ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012)

(continued...)

*State*, 937 N.E.2d 868, 873-74 (Ind. Ct. App. 2010); *see also Perkins v. State*, 812 N.E.2d 836, 841 (Ind. Ct. App. 2004) (intoxication can be established by showing impairment). There is no litmus test for determining whether a person meets this definition, but common indicia of intoxication include "(1) the consumption of [a] significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech." *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008) (citing *Fields v. State*, 888 N.E.2d 304, 307 (Ind. Ct. App. 2008)). These are merely indicia of impairment and not all of them need to be present for a person to be deemed impaired (and thus intoxicated). *See, e.g.*, *Woodson*, 966 N.E.2d at 142 (sufficient evidence for conviction where defendant smelled of alcohol, had slurred speech, and was abrasive toward officers, even though he had no difficulty standing or walking).[3]

---

[2]  (...continued)

("In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." (citing *Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177-78 (1940))).

[3]  Of course, an arrest may be supported by probable cause that the arrestee committed *any* offense, regardless of which crime was charged or which crime the officer thought had been committed, *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004); *Abbott*,

(continued...)

The five actually undisputed facts—namely, Gutierrez's disheveled appearance, possession of a golf club, apparent agitation, lack of cooperation, and red eyes—do not individually or in the aggregate suggest that

---

[3] (...continued)
705 F.3d at 715, and so the existence of arguable probable cause to arrest for *any* offense is a sufficient basis for qualified immunity. But we discuss only public intoxication because that is the single potential offense that Kermon has identified either here or below in his qualified-immunity presentation. *See Fox v. Hayes*, 600 F.3d 819, 837-38 (7th Cir. 2010) (defendants waived their *Devenpeck* argument that they had probable cause to arrest for other crimes by failing to raise the issue until a reply brief to their motion for a new trial); *cf. Jackson v. Parker*, 627 F.3d 634, 640 (7th Cir. 2010) (declining to review § 1983 plaintiff's unreasonable-detention theory because the only argument presented to the district court was his claim for false arrest, so neither the district court nor the defendants had a fair opportunity to address the unreasonable-detention theory); *Luellen v. City of East Chicago*, 350 F.3d 604, 612 nn.4 & 5 (7th Cir. 2003) (arguments not raised on appeal are waived). Nor can we imagine any other criminal charge that Gutierrez's reported (and undisputed) behavior could have supported. If there are such offenses, Kermon should have to suggest them to get the benefit of qualified immunity. We have repeatedly said that "[j]udges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam), or in the record, *see, e.g., Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010), so it stands to reason that we will not go truffle hunting through all of the laws applicable in Indiana to identify an offense to fit Gutierrez's conduct.

Gutierrez's thoughts or actions were impaired or that he had lost normal control of his faculties. *Cf. Hirsch v. Burke*, 40 F.3d 900, 903 (7th Cir. 1994) (probable cause of intoxication where arrestee had trouble balancing himself and appeared incoherent, smelled of alcohol, had bloodshot eyes, and was unable to state his name or date of birth); *United States v. Krzeminski*, 878 F. Supp. 1189, 1196 (N.D. Ind. 1995) (probable cause of intoxication where arrestee smelled of alcohol, inexplicably had gun sitting in his lap, and acted in an aggressive manner toward deputy, who had been informed that at least one occupant of the vehicle was highly intoxicated); *Porter v. State*, 391 N.E.2d 801, 807 (Ind. 1979) (probable cause of intoxication where arrestee smelled of alcohol; was unstable; had watery eyes and slurred speech; and was uncooperative and hostile toward officers), *disapproved on other grounds by Fleener v. State*, 412 N.E.2d 778 (Ind. 1980); *Hampton v. State*, 468 N.E.2d 1077, 1079-80 (Ind. Ct. App. 1984) (probable cause of intoxication where arrestee "appeared unstable on his feet, could not coherently answer the officers' questions, and smelled of alcohol"). The only one of these facts commonly associated with intoxication is red eyes, but no reasonable officer could believe that the presence of red eyes without some form of motor or cognitive impairment is indicative of intoxication. *Compare United States v. Tyler*, 512 F.3d 405, 411 (7th Cir. 2008) (no *reasonable suspicion* of intoxication to stop defendant who was carrying open container of alcohol on suspicion of public intoxication because defendant "was not stumbling, staggering, wavering, or otherwise unsteady on his

feet[; h]e was not incoherent when [the officers] approached; his speech was not slurred[;] and his eyes were not bloodshot"), *with United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003) (officer had *reasonable suspicion* of intoxication to stop defendant in high-crime area who was walking with an unsteady gait, carrying two firearms, fled after officer identified himself and ordered defendant to stop, and had trouble opening the door of the house into which he fled). If it were otherwise, then allergy sufferers and anyone who has recently wept, among others, could be arrested for public intoxication.

Of course, certain behavior can be so extreme and dangerous that it can be inferred for purposes of probable cause that it resulted from alcohol or drug impairment, such as erratic driving leading to the loss of control of a vehicle and a serious crash, *e.g.*, *Smith v. Ball State Univ.*, 295 F.3d 763 (7th Cir. 2002); *Qian v. Kautz*, 168 F.3d 949 (7th Cir. 1999). This is true even if the basis of the impairment later proves to be something else. *See Smith*, 295 F.3d at 766-70 (diabetic seizure); *Qian*, 168 F.3d at 951-54 (subdural hematoma). But Kermon does not contend that Gutierrez's observed behavior was of that extreme or dangerous nature.

At most, the five truly undisputed facts in the aggregate rise to the level of reasonable suspicion to justify a *Terry* stop so that Officer Kermon could confirm or dispel his suspicions through some form of reasonable

investigation.[4] But reasonable suspicion is a lower standard than probable cause. *See, e.g.*, *United States v.*

---

[4] Though Kermon contends that his encounter with Gutierrez began as a *Terry* stop, it does not appear that he undertook any type of investigation or even asked Gutierrez any questions; indeed, when Gutierrez requested a breathalyzer test Kermon refused to administer one. The lack of any investigation would provide further support for the notion, discussed briefly in footnote 1, *supra*, that Kermon's seizure of Gutierrez was not a *Terry* stop that evolved into an arrest but an arrest from the outset. *See, e.g.*, *United States v. White*, 648 F.2d 29, 34 (D.C. Cir. 1981) (explaining that "the questions, if any, asked" is a factor to consider in whether a seizure was a *Terry* stop or an arrest), *discussed in United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988); *United States v. Barber*, 557 F.2d 628, 632 (8th Cir. 1977) (holding that seizure was an arrest, not a *Terry* stop, because "[t]he officers' purpose in going to the car was admittedly not investigatory; in fact, they asked no questions of the three occupants. Once [the first suspect] was secured in the back room of the liquor store, the officers proceeded directly to the car to arrest all three occupants."). Additionally, Kermon's failure to conduct any investigation may in and of itself constitute a violation of state law, *see Pittman v. State*, 971 N.E.2d 147, 150 (Ind. Ct. App. 2012) (explaining that Ind. Code § 12-23-15-2 requires "an 'evaluation' for possible alternate causes (i.e., other than consumption of alcohol) for behavior that evinces intoxication and for which the subject will otherwise be transported to jail"); though whether that is the case would have no bearing on whether Gutierrez's clearly established fourth amendment rights were violated, *cf. Virginia v. Moore*, 553 U.S. 164, 168-76 (2008).

*Sokolow*, 490 U.S. 1, 7-8 (1989). And no reasonable officer could have reasonably, even if mistakenly, believed that these circumstances added up to probable cause that Gutierrez was committing the crime of public intoxication. The only way Kermon has a shot of prevailing on his qualified-immunity argument is if we accept his version of a disputed fact, because unlike the undisputed facts alone, adding to the equation the fact that a person cannot walk steadily may suggest impairment caused by the use of alcohol or controlled substances.

It is thus clear that Officer Kermon's entire argument is dependent upon a disputed fact. Our cases have given fair warning that an interlocutory appeal will be dismissed if the argument for qualified immunity is dependent upon disputed facts. *See Jones v. Clark*, 630 F.3d at 680; *Levan*, 604 F.3d at 369-70; *Viilo*, 547 F.3d at 712; *White*, 509 F.3d at 835-37; *Via*, 469 F.3d at 624-25; *McKinney*, 463 F.3d at 688-90; *accord McKenna v. City of Royal Oak*, 469 F.3d 559, 561-62 (6th Cir. 2006). Rather than accept the district court's factual assumptions, Kermon has simply ignored or denied that a factual dispute exists and built his argument for qualified immunity on that disputed fact. *See Viilo*, 547 F.3d at 712 ("In denying rather than embracing the facts the district court held to be sufficiently well-supported to create jury issues, the defendants have pleaded themselves out of court."); *White*, 509 F.3d at 836-37 (no jurisdiction where appellant's "legal arguments [were] wholly dependent upon, and inseparable from, his reliance on disputed facts"). This is in stark contrast to cases like *Jones v. Clark*, 630 F.3d at 681, and *Sallenger*, 473 F.3d at

738-39, where we found jurisdiction to exist after the appellants unambiguously conceded in their briefs and at oral argument that they were proceeding on the facts assumed by the district court, even though factual disputes had crept into their respective appeals.

### III

Here, the district court found that the issue of whether Gutierrez was swaying or walking with an unsteady gait is a genuine factual dispute in need of a jury's attention. Officer Kermon's unabashed reliance on that disputed fact in support of his plea for qualified immunity deprives us of jurisdiction over this interlocutory appeal. We therefore DISMISS this appeal for want of jurisdiction.