In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1418

ARLINTHIA WHITE, Individually
and as Personal Representative
of the Estate of Derrick Ford,
Deceased,

*Plaintiff-Appellee*,

*v.*

MARK GERARDOT, in his Individual
Capacity,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 05 C 382—**Roger B. Cosbey,** *Magistrate Judge.*

_____

ARGUED SEPTEMBER 27, 2007—DECIDED DECEMBER 5, 2007

_____

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Arlinthia White, individually and as personal representative of the Estate of Derrick Ford, filed this action under 42 U.S.C. § 1983. Ms. White alleges that Mark Gerardot, a Fort Wayne, Indiana police officer, violated Ford's Fourth and Fourteenth Amendment rights when he used excessive force to seize

Ford. The district court[1] denied Detective Gerardot's motion for summary judgment based on qualified immunity. Detective Gerardot then appealed this denial under *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). For the reasons set forth in this opinion, we dismiss the appeal for lack of jurisdiction.

# I

## BACKGROUND

### A.

On the night of January 10, 2004, Derrick Ford and his friends, Dana L. Jones, Sr., Kevin D. Tinsley, Javon Thomas and Patrick C. Myers, were standing outside the Veterans of Foreign Wars ("VFW") located on Winter Street in Fort Wayne, Indiana. Ford and his companions were wearing similar dark jackets. Jones, Tinsley and Thomas state that, around 2:30 a.m., they heard gunshots from the west side of Winter Street, where a group of people were gathered. Two individuals, unrelated to Ford and his friends, had been involved in a verbal altercation and one had shot the other. Upon hearing the gunshots, Ford, Jones, Tinsley and Thomas decided to leave the VFW. The four men headed toward the green Ford Taurus that Jones had driven to the VFW. Jones and Tinsley state that Detective Gerardot ran past the group of people gathered on Winter Street and instead followed the men as they

---

[1] The district court had jurisdiction under 28 U.S.C. § 1331. The parties consented to adjudication by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b).

proceeded toward the Taurus.[2]

As he was unlocking the driver's side door of his car, Jones heard someone command, "Freeze!" Two other affiants also heard "freeze." Jones observed that Ford, whose right hand had been on the front passenger door handle, let go of the handle and turned around with his hands in the air. Jones' affidavit further states that, as Ford was turning with his hands in the air,[3] Detective Gerardot shot him. Ford dropped to his knees; Detective Gerardot shot Ford several more times. No gun was recovered from Ford. Myers states that the people who had been watching these events walked away after the shooting.

Detective Gerardot presents a different version of the events. He was dispatched to the VFW because of a re-

---

[2] According to Tinsley's affidavit, the men had encountered Detective Gerardot before: "When my friends and I, including Derrick Ford, would be at Chapel Oaks, Officer Gerardot would mess with us all the time, pulling our pants and leering at us, harassing us. That also happened to Derrick Ford." Detective Gerardot moved to strike this paragraph; the district court denied his motion.

[3] Ms. White also submitted to the district court an affidavit from Dr. Werner U. Spitz. Dr. Spitz's affidavit states that Ford's wounds are consistent with his left arm being raised and that the wounds do not indicate that Ford was holding anything in his hands. In his motion for summary judgment, Detective Gerardot moved to strike Dr. Spitz's affidavit as inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court determined Detective Gerardot's motion to be moot because the court did not rely on Dr. Spitz's affidavit in denying summary judgment to Detective Gerardot.

ported gang fight. Detective Gerardot parked his un-marked police car near the VFW and observed the situation with binoculars. He saw three individuals exit the VFW and walk toward a parked car. Detective Gerardot states that he observed two of the individuals leaning into the car; the men appeared to be retrieving something from inside the car. It is unclear, however, who the men were, what they were retrieving and what the make and color of the car was. Detective Gerardot then saw two of the individuals run across the street.

Detective Gerardot states that he drove his car toward the VFW, where he saw a crowd of about one hundred people gathered. A fight broke out, Detective Gerardot states, and people were pushed around. He heard yelling and then observed a black male, wearing dark clothes with a hood, holding a semi-automatic handgun with his right hand above his head.[4] Detective Gerardot states that the individual (the "shooter") fired shots into the crowd and again continued to hold the weapon above his head.

Detective Gerardot exited his car; he claims that people in the crowd were trapped. The shooter again fired shots into the crowd. Detective Gerardot states that he yelled, "Police, everybody get down." He then started chasing the shooter, who fled. Detective Gerardot states that, as he ran by the crowd, he heard more gun shots coming from the west side of Winter Street. He also heard some-

---

[4] Ms. White points to numerous inconsistencies in Detective Gerardot's account among the various statements that he has given in connection with this case. On this point, Ms. White notes that Detective Gerardot's deposition states that he only observed a partial profile of the individual for a few seconds.

one yell, "He's shot, he's shot." Ford, the individual who Detective Gerardot believed to be the shooter, and another person ran up to a green Ford Taurus.

According to Detective Gerardot, Ford was facing the passenger side of the car; Detective Gerardot was behind him at an angle; Jones was at the driver's side door facing both Ford and Detective Gerardot. Detective Gerardot claims that he believed that Ford had a gun in front of his body. Detective Gerardot states that he yelled "police" several times and ordered the two men to "show me your hands." Jones put his hands above his head and said, "I don't have a gun." Detective Gerardot states that Ford was slightly hunched over and that his hands were concealed. He saw Ford's elbows moving and claims that he thought that Ford was reloading his gun or fixing a jam. Detective Gerardot states that Ford looked back at him over his left shoulder, made eye contact and appeared to check Detective Gerardot's position. Then, Detective Gerardot claims that he saw Ford start turning toward him with his hands near his mid-section. Detective Gerardot asserts that he saw something in Ford's hands. He then shot Ford. Detective Gerardot recounts that a group of people rushed toward Ford, laying on him and pulling on his hands, arms and coat.

## B.

Detective Gerardot moved for summary judgment on two grounds. He submitted that he did not use excessive force when he shot Ford because Ford's behavior prior to the shooting would have caused a reasonable officer to believe that Ford presented an imminent danger of death or serious bodily harm to Detective Gerardot or others. For

the same reason, Detective Gerardot also submitted that he was entitled to qualified immunity. After setting forth the facts in the light most favorable to Ms. White, the district court rejected both claims.

On the issue of excessive force, the district court determined that Ms. White had carried her burden of proving that there were genuine issues of material fact for trial. "White's evidence indicates that, contrary to Gerardot's allegations, Ford did not disobey Gerardot's commands and did not have a gun in his hands when Gerardot shot him. Instead, upon hearing Gerardot's command to 'freeze,' Ford turned to face Gerardot *with his hands in the air*, at which time Gerardot shot Ford." R.69 at 13. The court thus determined that a reasonable jury could conclude that Detective Gerardot's actions were not objectively reasonable and, accordingly, that he had violated Ford's Fourth and Fourteenth Amendment rights by using excessive force.

On the issue of qualified immunity, the district court ruled that summary judgment could not be granted on the first prong of the qualified immunity test because, accepting Ms. White's factual allegations as true, Detective Gerardot had violated Ford's Fourth and Fourteenth Amendment rights by using excessive force. On the second prong, the district court determined that "factual disputes between the parties preclude a finding that Gerardot is entitled to immunity as a matter of law." *Id.* at 16. The court explained that, "accepting White's facts as true, it is obvious that no reasonable officer would believe that it is lawful to shoot an unarmed suspect who is surrendering to the police with his hands in the air." *Id.*

## II

## DISCUSSION

Our discussion begins with jurisdiction. A district court's denial of summary judgment typically is an "unappealable interlocutory order." *Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629, 633 (7th Cir. 1984); *see also Whitford v. Boglino*, 63 F.3d 527, 531 (7th Cir. 1995). An exception to this general rule exists for a district court's denial of qualified immunity on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). *See generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949) (setting forth the test for determining which orders are appealable "final" orders).

It is well established, of course, that a denial of qualified immunity is only appealable "to the extent that it turns on an issue of law." *Mitchell*, 472 U.S. at 530. The Supreme Court of the United States has held that a defendant who is "entitled to invoke a qualified immunity defense[] may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). In reviewing a denial of qualified immunity, this court neither may "make conclusions about which facts the parties ultimately might be able to establish at trial" nor may "reconsider the district court's determination that certain genuine issues of fact exist." *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005). Our review is confined to "abstract issues of law," *Johnson*, 515 U.S. at 317, those issues which do not "depend on the outcome of a disputed factual question," *Leaf*, 400 F.3d at 1078. In sum, this court's "jurisdiction extends to interlocutory appeals . . . challenging a district court's determination that a set of facts demonstrate

a violation of 'clearly established' constitutional law and preclude the defendants from proffering a qualified immunity defense." *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (internal quotation marks and citation omitted).

Given these principles, the boundaries of our jurisdiction are clear in the typical qualified immunity appeal. We have jurisdiction when the party seeking to invoke it makes a purely legal argument that does not depend on disputed facts. *See, e.g.*, *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). Several sources of undisputed facts may frame our review of this purely legal question. We may "take, as given, the facts that the district court assumed when it denied summary judgment." *Washington v. Haupert*, 481 F.3d 543, 549 n.2 (7th Cir. 2007) (quoting *Johnson*, 515 U.S. at 317); *McKinney v. Duplain*, 463 F.3d 679, 688 (7th Cir. 2006); *Leaf*, 400 F.3d at 1078-79. We also may conduct our review by "accepting the plaintiff's version of the facts."[5]

---

[5] In addition, we have noted that, in certain circumstances, it is appropriate for this court to look at all the *undisputed* evidence in the record, even if the district court did not consider this evidence in its summary judgment ruling. *See Washington v. Haupert*, 481 F.3d 543, 549 & n.2 (7th Cir. 2007). Several of our sister circuits have reached the same conclusion. *See, e.g.*, *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1008 (8th Cir. 2003) (looking into the record for facts that the district court "likely assumed"); *Winfield v. Bass*, 106 F.3d 525, 534-35 (4th Cir. 1997) ("[A] question of the proper factual basis for our resolution of the purely legal question over which we possess jurisdiction may arise when a district court bases its decision on stated facts, but other, undisputed, material facts are present that dictate the conclusion that a governmental

(continued...)

*See Knox*, 342 F.3d at 656-57; *see also Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (holding that, in reviewing a denial of qualified immunity, "the court assumes that

---

[5] (...continued)
official is entitled to qualified immunity. . . . [T]his court . . . should not ignore other, undisputed, facts in rendering our decision on the legal question."); *Dolihite v. Maughon*, 74 F.3d 1027, 1035 n.2 (11th Cir. 1996) (noting that it had looked to the record to identify "more precise" facts than those set forth by the district court).

In *Washington*, we were presented with a situation in which the plaintiff presented an account of " 'undisputed facts,' which differ[ed] from that relied on by the district court." *Washington*, 481 F.3d at 549. The district court had not considered two photographs that the plaintiff alleged were relevant to the qualified immunity issue. We held that this court "is not required to accept the facts as described by the district court, although in most instances it is appropriate to do so." *Id.* at 549 n.2. We further held that "where the appellants are not asking the court to resolve factual disputes or determine whether the evidence is sufficient, it is appropriate for this court to look beyond the factual account of the district court to all undisputed evidence." *Id.*

In this case, Detective Gerardot, relying on our holding in *Washington*, explicitly states that in seeking appellate review he is not asking us to resolve factual disputes; rather, he states that he is asking us to consider all of the undisputed evidence in the record. This case is different from *Washington*, however, because the facts that Detective Gerardot claims are undisputed *are* disputed. Indeed, Detective Gerardot simply has taken his version of the facts and labeled them "undisputed." Similarly, throughout many of his legal arguments, Detective Gerardot refers to the "undisputed" facts, but again these merely are his version of disputed facts.

the plaintiff's factual assertions are true and determines whether those facts are sufficient to defeat defendant's" assertion of qualified immunity); *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007); *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 104-05 (2d Cir. 2006).[6]

This case does not fall into one of the two situations that we have described as supporting our interlocutory jurisdiction. In his brief, Detective Gerardot asserts that he is not asking this court to resolve factual disputes. Nevertheless, he fails to base his legal arguments either on the facts that the district court assumed in denying him qualified immunity or on the facts alleged by Ms. White. Indeed, all of Detective Gerardot's legal arguments are premised on *his* version of the facts. As we have already noted, the district court determined that Detective Gerardot's version of the facts genuinely were disputed.

Detective Gerardot claims that he is entitled to qualified immunity because his use of deadly force did not violate Ford's constitutional rights and, in any event, those rights were not clearly established at the time of the

---

[6] In contrast, we do not have jurisdiction where the appellant's sole argument is that the evidence presented by the plaintiff was insufficient to create a genuine issue of material fact. *See, e.g.*, *McKinney v. Duplain*, 463 F.3d 679, 690 (7th Cir. 2006) (holding that we lack jurisdiction where appellant "maintains that the record does not support the district court's conclusion that a genuine issue of fact exists"); *Via v. LaGrand*, 469 F.3d 618, 621-23 (7th Cir. 2006); *see also Johnson*, 515 U.S. at 319-20. Where the appellant only makes a sufficiency of the evidence argument, the appeal does not present "abstract issues of law," and therefore we do not have jurisdiction under the Supreme Court's holding in *Johnson*.

shooting. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (setting out the two-part test for qualified immunity). In making these arguments, however, Detective Gerardot relies on disputed facts. For example, he asserts that Ford was the shooter whom he had seen fire a gun into the crowd, that Ford disobeyed his commands to raise his hands and that, while he was shouting these commands, Ford kept both of his hands in front of his body near his waist. Detective Gerardot further asserts that Ford was moving his hands in front of him as if he were reloading his gun or fixing a jam. When Ford turned around, Detective Gerardot claims that he saw a gun in Ford's hands and that he believed Ford was about to shoot him. Under these circumstances, Detective Gerardot claims that he "feared for his own life." Throughout his brief, Detective Gerardot repeatedly recites these facts. Moreover, in conjunction with these facts, he relies on a plethora of cases purporting to stand for the proposition that a police officer's use of deadly force is reasonable for Fourth Amendment purposes where the officer believes that he or a third party is in imminent danger of death or serious bodily injury.

Both the adjudicative facts offered by the Detective and his characterization of those facts are in conflict with the account offered by Ms. White. As the district court recognized, "[Ms.] White's evidence indicates that, contrary to Gerardot's allegations, Ford did not disobey Gerardot's commands and did not have a gun in his hands when Gerardot shot him. Instead, upon hearing Gerardot's command to 'freeze,' Ford turned to face Gerardot *with his hands in the air*, at which time Gerardot shot Ford." R.69 at 13. Ms. White also disputes the reasonableness of Detective Gerardot's belief that Ford was the individual who shot a gun into the crowd, given that it was dark, that

many individuals were wearing similar clothing and that Detective Gerardot only had a brief look at the individual who fired into the crowd. Detective Gerardot advances no legal arguments purporting to show that he is entitled to qualified immunity based upon the facts tendered by Ms. White and properly assumed by the district court in denying him qualified immunity on summary judgment.

Our decisions, as well as those of our sister circuits, demonstrate that we do not have jurisdiction when, as here, all of the arguments made by the party seeking to invoke our jurisdiction are dependent upon, and inseparable from, disputed facts. *McKenna v. City of Royal Oak*, 469 F.3d 559, 562 (6th Cir. 2006); *Sallenger v. Oakes*, 473 F.3d 731, 738 (7th Cir. 2006); *cf. McKinney v. Duplain*, 463 F.3d 679, 688 (7th Cir. 2006); *Via v. LaGrand*, 469 F.3d 618, 623 n.2 (7th Cir. 2006).

Our colleagues on the Court of Appeals for the Sixth Circuit reached the same conclusion in a remarkably similar case. In *McKenna*, the plaintiff brought suit against several police officers claiming that the officers had used excessive force against him. The district court determined that genuine issues of material fact precluded summary judgment on the ground of qualified immunity. In the ensuing appeal, the police officers asserted that they were raising "only the legal issue of whether the facts set forth by [McKenna] constituted a violation of clearly established law." *McKenna*, 469 F.3d at 561. Notwithstanding this assertion, the Sixth Circuit explained that, just as is the case here, "all three arguments advanced by the officers on the issue of qualified immunity *in fact rely on their own disputed version of the facts, not the facts as alleged by McKenna.*" *Id*. (emphasis supplied). The court deter-

mined that "no legal argument for qualified immunity . . . can be extracted from [the officers'] reliance on disputed facts." *Id.* at 562 n.2. Under these circumstances, the court concluded:

> It may be that purely legal arguments for granting qualified immunity relying on the facts taken in the light most favorable to McKenna could have been advanced in this case. However, because genuine issues of material fact regarding the officers' qualified immunity claim do exist, and because the officers have in fact made no arguments concerning the denial of qualified immunity that do not rely on disputed facts this court does not have jurisdiction over this part of their appeal.

*Id.* at 562; *cf. Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252 (5th Cir. 2005) (noting that jurisdiction does not exist where the "appellant [does] not raise sufficient legal issues separable from the facts or the ultimate merits of the case").

Our decision in *Sallenger* is consistent with this conclusion. In that case, we noted that "[t]oward the end of their opening brief, the defendants question a number of facts [assumed] by the district court." *Sallenger*, 473 F.3d at 738. Several considerations undergirded our holding that jurisdiction existed to reach the merits in *Sallenger*. We emphasized that the appellants had stated explicitly, both in their brief and at oral argument, that they were not asking the court to revisit facts found by the district court and that we could address their arguments without revisiting those facts. *Id.* Additionally, the appellants in *Sallenger* raised legal issues that were separate from their impermissible questioning of the disputed facts (which only occurred toward the end of their opening

brief). *Id.* at 738. Thus, *Sallenger* is consistent with our holdings that we only have jurisdiction to consider purely legal arguments that do not depend on disputed facts. *Cf. LaGrand*, 469 F.3d at 623 n.2 ("[I]f the defendant argues on appeal that he is entitled to qualified immunity *no matter how the genuine issue of material fact is resolved*, we would have jurisdiction to consider that purely legal question." (emphasis supplied)).

*Sallenger* and *McKenna* thus counsel that, where the appellant's arguments rely on disputed facts, this court has jurisdiction only if the legal arguments for qualified immunity do not *depend* on, or are separable from, disputed facts. Of course, this does not mean that the mere mention of disputed facts in an otherwise purely legal argument extinguishes our jurisdiction. *See, e.g.*, *Sallenger*, 473 F.3d at 738-39 (concluding that there was jurisdiction because there were purely legal issues to resolve despite the mention of some disputed facts); *Atteberry*, 430 F.3d at 252 (noting that "[u]navoidable references to the underlying facts of a case do not spoil our jurisdiction over a properly composed interlocutory appeal"). Rather, the key inquiry is whether the appellant's arguments necessarily depend upon disputed facts. If an argument is not dependent upon disputed facts, the court simply can disregard mention of the disputed facts and address the abstract issue of law without running afoul of *Johnson*.

Here, Detective Gerardot's only argument on appeal is that a reasonable officer in his shoes would not have known that using deadly force against Ford was unconstitutional because he believed that Ford had just fired shots into a large crowd, that Ford was concealing a weapon in front of his body and that Ford was going to

shoot him when he turned around with his hands at waist level. Because there is an issue of material fact as to whether Ford was surrendering with his hands in the air, Detective Gerardot's argument necessarily depends on his version of the facts. Indeed, Detective Gerardot would be hard pressed to develop any purely legal argument for why he is entitled to qualified immunity if Ford had his hands in the air and was surrendering, as alleged by Ms. White and as assumed by the district court.[7] Detective Gerardot's legal arguments are wholly dependent upon, and inseparable from, his reliance on disputed facts and therefore we conclude that we do not have jurisdiction to consider his appeal.

## Conclusion

The district court denied Detective Gerardot's motion for summary judgment because there were genuine issues of material fact as to whether Ford was a threat to Detective

---

[7] Apparently recognizing this, Detective Gerardot, toward the end of his brief, relies on *Anderson v. Russell* for the proposition that "minor discrepancies in testimony do not create a material issue of fact in an excessive force claim, particularly when, as here, the witness views the events from a worse vantage point than that of the officers." *Anderson*, 247 F.3d 125, 131 (4th Cir. 2001). Detective Gerardot relies on *Anderson* to argue that Jones' testimony that Ford had his hands in the air is insufficient to create a genuine issue of material fact. Of course, this is an argument about the sufficiency of the evidence, which is exactly what we are precluded from reviewing on an appeal of a denial of qualified immunity. *Anderson* itself was not decided on appeal from summary judgment—it was an appeal from a judgment entered after a jury trial. *See id.* at 128.

Gerardot. Because Detective Gerardot has not raised any legal arguments based upon the facts that the district court assumed in denying him qualified immunity or on the facts alleged by Ms. White, we lack jurisdiction under the Supreme Court's holding in *Johnson* to review the district court's decision. Accordingly, we dismiss the appeal for lack of jurisdiction.

APPEAL DISMISSED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*