In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1287

ANTHONY GANT,

*Plaintiff-Appellee,*

*v.*

DANIEL HARTMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:16-CV-380 — **Theresa L. Springmann**, *Chief Judge.*

ARGUED FEBRUARY 7, 2019 — DECIDED MAY 14, 2019

Before BAUER, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Anthony Gant brought this ac-
tion against three police officers and the City of Fort Wayne
for injuries he sustained as he fled from an armed robbery.
Gant's operative First Amended Complaint alleges several
constitutional violations and seeks damages under 42 U.S.C.
§ 1983. The defendants moved for summary judgment, assert-
ing claims of qualified immunity for Officers Daniel Hartman,
Bradley Griffin, and Jason Palm.

The district court granted summary judgment for all defendants except Officer Hartman, who Gant alleges violated his Fourth Amendment rights by using unconstitutional excessive force in shooting him. Officer Hartman now appeals the district court's denial of summary judgment. Because Officer Hartman's argument depends upon and is inseparable from the disputed facts identified by the district court, we must dismiss this appeal for lack of appellate jurisdiction.

I.   *The Robbery and Shooting*

On August 23, 2015, just before sunset, Officers Hartman, Griffin, Palm, and others responded to a report of an ongoing armed robbery at a Dollar General store in Fort Wayne, Indiana. Police dispatch told Officer Hartman that a female caller was on the phone with her friend, an employee of Dollar General, when the employee screamed and exclaimed several times that she could not open the register because it was on a timer. Hartman and the other responding officers knew that there had been a series of armed robberies at various Dollar General stores in the Fort Wayne area. The police had not arrested any suspects in association with these robberies. In the previous robberies, two men would enter the store, display handguns, confine or zip-tie employees, wait for the registers to open, and depart after collecting cash, cigarettes, and employees' cell phones.

Arriving at the scene of the robbery, Officer Hartman crouched ten to fifteen feet from the front entrance of the store. He could not see clearly into the store because shelving units blocked his view. Officers Griffin and Palm arrived and positioned themselves respectively on the west and east sides of the store's front entrance. Two more officers (Edward Black and Mark Bieker) went to the back of the store. By this time,

the dispatcher had told the officers that the 911 caller had lost phone contact with the employee, who had continued to yell that she could not open the register. While Officers Hartman, Griffin, and Palm were discussing how to proceed, the two officers at the back of the store radioed that they had observed suspects start to try to escape out the back but then retreat into the store. Officer Palm then reported that he saw two people inside approaching the front entrance of the store.

What happened next was recorded by the cameras of two patrol cars facing the store entrance. The video recordings were subject to frame-by-frame analysis by Officer Hartman's expert witness. The following events happened in rapid succession, all occurring within a single second. Officer Hartman started to approach the front entrance. As he started toward the doors, two men appeared in the front entrance. The first suspect, later identified as Christopher Johnson, ran out of the front entrance. All three officers shouted to the suspects to get down on the ground. Officer Hartman started to run toward Johnson, but then turned to see plaintiff Anthony Gant standing in the doorway. Gant had his left arm extended, holding the door open. Hartman then fired two shots. One struck Gant in the abdomen.

Officer Hartman explained afterward that he feared for his life because he believed Gant was holding a handgun, and Hartman had no cover from a potential shot. At the moment he fired his weapon, Officer Hartman estimates, he was less than twenty feet away from Gant. Officer Hartman reported later that Gant showed no signs of surrendering or obeying commands to get down on the ground. Officer Hartman believed Gant was holding a gun in his left hand and was preparing to shoot.

It was later determined that Gant had not been holding a handgun, nor any object, in his hand when Officer Hartman fired. Gant argues that he was either attempting to surrender or that he was given no opportunity to respond to the orders because he was shot immediately as he was exiting the store. On July 25, 2016, Gant pleaded guilty to the charge of armed robbery under Indiana Code § 35-42-5-1(1).

## II.  *District Court Proceedings*

After pleading guilty, Gant filed this § 1983 action against Hartman and others for violating his Fourth Amendment rights by using excessive force. The defendants moved for summary judgment, asserting the defense of qualified immunity for Officers Hartman, Griffin, and Palm. The district court granted summary judgment for all defendants except Officer Hartman. The court found that, when viewing the evidence in the light reasonably most favorable to the plaintiff, that claim presented genuine issues of material fact for a jury to decide. The court found that a jury would need to decide whether it was reasonable for an officer in Hartman's position to believe that plaintiff Gant had a gun. The court also found that "a reasonable juror could conclude either that Plaintiff was in the process of obeying Defendant Hartman's commands or that he did not have the opportunity to obey Defendant Hartman's commands." Because of these factual disputes, the district court denied Hartman's motion for summary judgment based on qualified immunity. Hartman has appealed.

## III.  *Appellate Jurisdiction*

A denial of summary judgment is generally an unappealable interlocutory order because it is not a "final decision" for

purposes of 28 U.S.C. § 1291. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). There is an exception for appeals based on the denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). An order denying qualified immunity on summary judgment can be appealed immediately as a collateral order that amounts to a final decision on the defendant's right not to stand trial. See *Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014); *Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013) (dismissing interlocutory appeal of denial of qualified immunity because appellant's argument depended on disputed fact), citing *Mitchell*, 472 U.S. at 524–30.

A denial of qualified immunity can be appealed, however, only "to the extent that it turns on an issue of law." *Mitchell*, 472 U.S. at 530. The Supreme Court held in *Johnson v. Jones* that a defendant cannot appeal an order denying immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." 515 U.S. 304, 319–20 (1995). When the district court concludes that factual disputes prevent the resolution of a qualified immunity defense, "these conclusions represent factual determinations that cannot be disturbed in a collateral-order appeal." *Jones v. Clark*, 630 F.3d 677, 681 (7th Cir. 2011); see also *Gutierrez*, 722 F.3d at 1010 ("[A]n appellant challenging a district court's denial of qualified immunity effectively pleads himself out of court by interposing disputed factual issues in his argument."). An appellate court may not "make conclusions about which facts the parties ultimately might be able to establish at trial," nor may it "reconsider the district court's determination that certain genuine issues of fact exist." *McKinney v. Duplain*, 463 F.3d 679, 688 (7th Cir. 2006), quoting *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005).

To establish appellate jurisdiction, therefore, the party seeking review must invoke "a purely legal argument that does not depend on disputed facts." *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007) (dismissing interlocutory appeal from denial of qualified immunity because defendant failed to base legal arguments either on facts assumed by district court or alleged by plaintiff). Appellate jurisdiction is also improper when the appellant's supposedly legal arguments "are dependent upon, and inseparable from, disputed facts." *Id.* at 835.

*White* illustrates this rule in a very similar case (except that the suspect in that case died from the officer's shot). In *White* the defendant officer claimed that he feared for his life because he believed the suspect had a gun and, despite the officer's commands to raise his hands, moved his hands in front of him "as if he were reloading his gun." *Id.* at 834. The plaintiff, however, offered testimony that the suspect was neither armed nor disobeying orders when the officer shot him. The district court denied summary judgment based on qualified immunity because of the disputed factual issues. We dismissed the defendant's interlocutory appeal of that denial because the defendant's argument necessarily depended on and was inseparable from his version of the facts. *Id.* at 836–37.

The defendant's reliance on disputed facts in *White* barred appellate jurisdiction. To appeal a denial of qualified immunity, an appellant must "refrain[] from contesting any fact that a reasonable jury could resolve against him." *Rainsberger v. Benner*, 913 F.3d 640, 643 (7th Cir. 2019) (affirming denial of qualified immunity). The appellant's argument therefore must accept the facts and reasonable inferences favorable to the plaintiff or the facts assumed by the district court's

decision. *Johnson*, 515 U.S. at 319; *Gutierrez*, 722 F.3d at 1009; see also *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018) (dismissing interlocutory appeal because appellant did not raise a pure legal issue). The line between appealable and non-appealable orders established by *Johnson* can often be difficult to apply. See *Gutierrez*, 722 F.3d at 1011. The key is that the legal argument cannot depend entirely on disputed facts. An appeal making an otherwise purely legal argument may, however, survive "the mere mention" of disputed facts. *Id.*

There is also a narrow, pragmatic exception allowing appellants to contest the district court's determination that material facts are genuinely disputed. In *Scott v. Harris*, the Supreme Court found the defendant police officer could dispute the district court's finding that a genuine factual dispute existed because a video recording of the incident "utterly discredited" the plaintiff's testimony that he was driving carefully. 550 U.S. 372, 380–81 (2007). The video recording of the plaintiff driving erratically during a high-speed chase was irrefutable evidence that he "posed an actual and imminent threat to the lives" of others and that, as a matter of pure law in light of that incontestable fact, the defendant used reasonable force to stop him. *Id.* at 383–84.

We recently applied this reasoning in *Dockery v. Blackburn*, finding that the plaintiff's version of the facts was discredited by video evidence. 911 F.3d 458, 466 (7th Cir. 2018) (reversing denial of qualified immunity because, despite conflicting versions of the facts, video evidence showed there was no genuine issue of material fact). The plaintiff in *Dockery* argued that the video of his arrest was subject to multiple interpretations and that he did not intend to resist the officers. We found, however, that the video plainly showed that Dockery was

"uncooperative and physically aggressive" toward the officers and "wildly kicked" in their direction as they attempted to handcuff him. *Id.* at 467.

Other courts applying this narrow *Scott* exception have stressed that it applies only in the rare case at the "outer limit" of the principle established by *Johnson*. E.g., *Bishop v. Hackel*, 636 F.3d 757, 769 (6th Cir. 2011); *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007). "*Scott* does not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers *some* support for a governmental officer's version of events." *Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011). Instead, *Scott* holds that "where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review." *Blaylock*, 504 F.3d at 414 (dismissing appeal in relevant part where video did not blatantly and demonstrably contradict plaintiff's version); accord, *Witt*, 633 F.3d at 276–77 (same). While the video in *Dockery* demonstrated facts reaching this outer limit, it should be considered a rare case. It does not apply where the video record is subject to reasonable dispute.

In this case, Officer Hartman has not satisfied any of the routes to interlocutory appellate jurisdiction under § 1291. He accepts neither the facts most favorable to the plaintiff nor the facts assumed by the district court; in fact, he has openly contested the facts throughout his briefs and oral argument.[1]

---

[1] See, e.g., Appellant's Reply Br. at 3 ("Contrary to the district court's opinion, a reasonable juror could not conclude that Gant was in the process of obeying Hartman's commands."); *id*. ("[T]he district court did not set forth a single disputed material issue of fact."); Oral Arg. 4:05 ("The

Officer Hartman has consistently relabeled certain facts as "undisputed," and he asks this court to challenge the district court's determination that material facts are genuinely disputed. Officer Hartman has asserted repeatedly that it is undisputed that Gant was not attempting to surrender. That is correct, but Gant contends that he was not resisting arrest when he was shot and that he was either attempting to comply with orders or did not have time to respond to those orders when Officer Hartman shot him in that critical second, as we described above. Officer Hartman cannot pursue an interlocutory appeal by arguing that the evidence is insufficient to support the district court's conclusion or by relabeling the disputed facts as "undisputed." These add up to "a back-door effort to contest the facts." *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011); see also *Thompson v. Cope*, 900 F.3d 414, 420 (7th Cir. 2018).

Absent irrefutable evidence, we may not use an interlocutory appeal to second-guess the district court's conclusion that material facts are disputed. We have watched the videos of Gant's shooting and arrest, and we have reviewed the frame-by-frame analysis by Hartman's expert witness. Unlike the footage in *Scott* and *Dockery*, the videos in this case do not "utterly discredit" Gant's contentions that he was trying to comply with orders or did not have time to respond to Officer Hartman's commands. The recordings show Gant standing in the doorway, his arm extended holding the door, and then his arm lowering slightly before Officer Hartman fired. All of this

---

undisputed facts show that [Gant] was not surrendering when he was shot and that he posed a threat of serious bodily harm or death to Officer Hartman at the time he discharged his firearm."); *id*. at 6:40 ("The district court was wrong and there are no disputed facts.").

occurs within a single second. This is not comparable to *Dockery* where the plaintiff actively pushed and kicked at officers, thus "utterly discrediting" his claim that he had not resisted arrest. Nor do the videos here provide irrefutable proof that it was reasonable for Officer Hartman to believe Gant was holding a gun when he was shot. Outside of irrefutable evidence like that in *Scott* and *Dockery*, an appellate court is not in the position to decide on interlocutory appeal what facts may eventually be established at trial by a reasonable factfinder. See *McKinney v. Duplain*, 463 F.3d 679, 688 (7th Cir. 2006).

Officer Hartman claims that he is entitled to qualified immunity because his actions did not violate Gant's constitutional rights and, even if they did, those rights were not clearly established on or before August 23, 2015. To make this argument, however, Officer Hartman asks in effect that we resolve facts that the district court treated as disputed. Officer Hartman relies on several cases, such as *Ford v. Childers*, 855 F.2d 1271 (7th Cir. 1988), and *Tom v. Voida*, 963 F.2d 952 (7th Cir. 1992), to support his claim that his use of deadly force was reasonable. However, the facts of those police-action shootings were not comparable to the district court's version of the evidence here most favorable to plaintiff Gant. The armed suspect in *Ford* was attempting to flee when he was shot. 855 F.2d at 1275. The suspect in *Tom* was actively engaged in a violent struggle with the officer when she used deadly force. 963 F.2d at 955. Our decisions show that it is unreasonable to use deadly force against a suspect who is not resisting arrest and who is genuinely attempting to surrender. See, e.g., *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) ("This prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including

resisting arrest, threatening officer safety, or potentially carrying a weapon."); see also *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (It is "clearly established that using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force."). To answer the question of reasonableness as a matter of law, we would need to resolve disputed issues of material fact about that critical one second.

Because Officer Hartman's appellate argument relies on disputed facts and he has not presented sufficient evidence to "utterly discredit" the district court's findings, this court lacks jurisdiction over this interlocutory appeal. The appeal is

DISMISSED.