In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-2741

JOSEPH S. FERGUSON,

*Plaintiff-Appellee,*

*v.*

RYAN MCDONOUGH,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:19-cv-00055-NJ — **Nancy Joseph**, *Magistrate Judge.*

_____

ARGUED APRIL 14, 2021 — DECIDED SEPTEMBER 8, 2021

_____

Before MANION, ST. EVE, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Our jurisdiction over this interlocutory appeal turns on a police dashcam video that captured police officer Ryan McDonough's arrest of Joseph Ferguson, including the moment he tased Ferguson. Ferguson sued Officer McDonough under 42 U.S.C. § 1983, alleging that Officer McDonough violated his Fourth Amendment rights by using excessive force to effectuate his arrest. Following discovery, the parties cross-moved for summary judgment, both

asserting that the dashcam video supported granting sum-
mary judgment in their favor. The district court disagreed
that the video resolved the parties' factual disputes and de-
nied both motions.

This appeal concerns only the denial of Officer
McDonough's motion, which asserted that he was entitled to
summary judgment because qualified immunity shielded
him from civil liability for any damages Ferguson sustained
from the arrest. The district court concluded that when the
facts were viewed in a light most favorable to Ferguson, one
reasonable interpretation of the dashcam video was that Fer-
guson was not actively resisting arrest when Officer
McDonough tased him. It further concluded that a reasonable
officer would have known by the time of Ferguson's tasing
that an officer's escalation of force in response to an individ-
ual not actively resisting violated the Fourth Amendment's
proscription against excessive force. Because one view of the
evidence supported that Ferguson was not actively resisting
when Officer McDonough tased him, a jury could reasonably
find that Officer McDonough's use of the taser was unreason-
ably excessive under the circumstances. Accordingly, the dis-
trict court held that Officer McDonough was not entitled to
summary judgment on his qualified immunity defense.

On appeal Officer McDonough argues that the dashcam
video contradicts the district court's finding that the video is
open to interpretation because the video clearly shows that
Ferguson was actively resisting arrest moments before Officer
McDonough tased him, and that Ferguson continued to argue
with Officer McDonough while raising his hands. Under
these circumstances, Officer McDonough contends that his

deployment of the taser was objectively reasonable, and hence, he is entitled to qualified immunity.

We have jurisdiction to review the merits of Officer McDonough's appeal only if the dashcam video utterly discredits the district court's finding that there was a factual dispute over whether Ferguson was actively resisting when Officer McDonough tased him. It does not, so we must dismiss his appeal for lack of appellate jurisdiction.

I

Our recount of the facts largely tracks the district court's account at summary judgment. Ryan McDonough is a police officer with the Kenosha Police Department. On July 9, 2018, he and fellow officer Kyle Kinzer were dispatched to an apartment building located at 6100 24th Avenue in Kenosha, Wisconsin, in response to a 911 report of disorderly conduct. The 911 call was placed by the building's manager who reported that there was a woman inside the building in Joseph Ferguson's apartment who was "causing problems" and did not live there.

Ferguson was not present when the two officers arrived at the building. Upon arrival, Officer Kinzer spoke with the building manager who stated that he did not witness any fighting between Ferguson and the woman, Cloey Rupp-Kent. Meanwhile Officer McDonough spoke with Rupp-Kent who was, at that time, alone inside Ferguson's apartment. Rupp-Kent told Officer McDonough that she and Ferguson had been fighting earlier in the day. Ferguson had left the apartment for a few hours but then reportedly came back belligerent. Upon returning, Ferguson allegedly kicked an air conditioning unit out of a window, knocked a phone out of

Rupp-Kent's hands, punched her in the face, laid on top of her on the bed, pointed a knife at her chest, and threatened to stab her. While in the apartment, Officer McDonough observed bruises on Rupp-Kent's leg and neck, and redness on her face. He also observed the knife Ferguson purportedly pointed at her and collected it into evidence.

After speaking with Rupp-Kent, Officer McDonough went outside to his squad car to complete paperwork on the incident. There, he learned that Ferguson was on probation for robbery, had his driving privileges revoked, and drove a Chrysler. He also reviewed Ferguson's booking photo.

While Officer McDonough was completing the paperwork, he saw Ferguson drive past him in a Chrysler. Officer McDonough followed Ferguson's car without his squad car lights activated. Ferguson then turned two corners, pulled over, and parked his car in front of what Ferguson later indicated was his mother's house (which Officer McDonough did not know at the time). As Ferguson exited his car, Officer McDonough activated his squad car lights and repeatedly yelled at him to stay in the car.

The parties have different accounts of what happened next. For his part, Ferguson contends that he got out of his car to ask Officer McDonough why he was being pulled over, to which Officer McDonough merely responded, "you're under arrest." Ferguson asserts that Officer McDonough then aggressively approached him, shoved him, and gave him two contradictory commands: to place his hands on top of his car and also behind his back. Ferguson states that since he could not simultaneously do both, he placed "one hand on top of the car and one behind [his] back." Although it is undisputed that a tussle ensued next as Officer McDonough went to

handcuff Ferguson, Ferguson says the tussle occurred because Officer McDonough was "pushing him around" and was so rough with him that he pulled off all his clothes. The parties do not dispute that the tussle between them ended with Officer McDonough deploying a taser at Ferguson. Ferguson however claims that the taser was unnecessary because he was not resisting arrest and had surrendered with both hands in the air when Officer McDonough tased him.

Officer McDonough disagrees and claims Ferguson was actively resisting arrest. He contends that when he approached Ferguson after Ferguson got out of his car, he attempted to turn Ferguson toward the car so that he could handcuff him behind his back, but Ferguson pulled one arm free. Officer McDonough says he then twice told Ferguson to stop resisting arrest but Ferguson nevertheless continued to resist. According to Officer McDonough, the tussle followed because he attempted to "decentralize" Ferguson by taking him to the ground which resulted in his clothes coming off, but Ferguson again resisted and was able to stand up despite the take-down attempt. Officer McDonough states that he subsequently deployed his taser for five seconds to get Ferguson under control, and that after Ferguson fell to the ground, backup arrived to help him handcuff Ferguson. Officer McDonough asserts that he justifiably tased Ferguson because he was concerned about his safety since he knew that Ferguson had recently threatened Rupp-Kent with a knife, and he did not have backup officers to assist him while Ferguson was actively resisting arrest.

After the taser incident, Ferguson was charged with several crimes. Most of the charges were subsequently dismissed. On October 10, 2018, Ferguson pled guilty to three charges

not relevant to this appeal. On January 8, 2019, Ferguson, proceeding pro se, sued Officer McDonough under § 1983 alleging that Officer McDonough subjected him to excessive force by tasing him in violation of his Fourth Amendment rights. As relevant here, Officer McDonough moved for summary judgment, asserting the defense of qualified immunity. The district court denied the motion.

In so doing, the district court concluded that, when construing the facts in the light most favorable to Ferguson, Ferguson's § 1983 claim presented genuine issues of material fact for a jury to decide. The district court explained that Officer McDonough and Ferguson had offered competing accounts of the circumstances surrounding Ferguson's arrest, and the dashcam video of the incident did not conclusively support either party's account. For example, the district court determined that one reasonable interpretation of the video, which was consistent with Ferguson's version of events, "is that at the point that [Officer] McDonough tased Ferguson, [Ferguson] was standing next to his car with his hands in the air," and "[a] reasonable jury could, thus, conclude that the use of the taser was unnecessary and unreasonable."

The district court noted, however, that "[a]nother reasonable interpretation of the video, consistent with [Officer] McDonough's version of events, is that although Ferguson was not physically resisting at the time that McDonough tased him, Ferguson was struggling moments before McDonough deployed his taser." Accordingly, a reasonable jury could also conclude that Officer McDonough's use of the taser was reasonable. Thus, the district court found that a jury would need to draw inferences from the video and consider the totality of circumstances to ultimately decide whether it

was reasonable for an officer in Officer McDonough's position to deploy a taser at Ferguson in this instance.

Because the video did not resolve the parties' dispute and "one reasonable interpretation of the videotape is that at the point that [Officer] McDonough tased Ferguson" he was not resisting arrest and thus "the use of the taser was unnecessary and unreasonable," the district court denied Officer McDonough's motion for summary judgment based on qualified immunity. The district court explained that a reasonable officer would have known, at the time of the taser incident on July 9, 2018, that an officer's substantial escalation of force in response to an individual's passive resistance violated the individual's Fourth Amendment rights against excessive force. See, *e.g.*, *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) (noting one of this court's guideposts in excessive force cases is that "an officer may not use significant force (like a Taser) against a 'nonresisting or passively resisting' subject" (quoting *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 732 (7th Cir. 2013)). And, the district court continued, our circuit had clearly established by the time of the taser incident that it was unconstitutional for an officer to escalate force on a passively resisting individual. See, *e.g.*, *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) ("It [is] clearly established that using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force."). The district court therefore held that Officer McDonough was not entitled to qualified immunity.

Officer McDonough now appeals the district court's interlocutory order denying him qualified immunity on summary judgment.

II

On appeal Officer McDonough asserts that he is entitled to qualified immunity because (1) he did not commit a constitutional violation because there is no dispute—based on the dashcam video—that Ferguson was actively resisting, and (2) he did not violate any clearly established constitutional right because Ferguson has not cited any analogous case that would cause an officer to know that it was constitutionally prohibited for Officer McDonough to tase Ferguson once as a result of him actively resisting.

Officer McDonough's argument, of course, directly contradicts the district court's finding that a genuine issue of fact exists as to whether Ferguson was actively resisting, given the district court's view that the dashcam video is open to interpretation. Since we generally cannot review an interlocutory order finding that a genuine factual dispute prevents the resolution of a defendant's qualified immunity defense on summary judgment, we are unable to address the merits of Officer McDonough's interlocutory appeal unless we first determine that we have jurisdiction over it. We hold that we do not.

A

Under 28 U.S.C. § 1291, this court may generally only exercise jurisdiction over appeals from final decisions of the district court. A district court order denying summary judgment is ordinarily unappealable since it is not a final decision under § 1291 but rather an interlocutory ruling. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011). The collateral order doctrine provides an exception, allowing appeals from interlocutory rulings which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be

denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); see *Mitchell v. Forsyth*, 472 U.S. 511, 526–29 (1985). Under the collateral order doctrine, an order denying qualified immunity on summary judgment typically can be appealed immediately because it usually "amounts to a final decision on the defendant's right not to stand trial," and as such, is a collateral order. *Gant v. Hartman*, 924 F.3d 445, 448 (7th Cir. 2019); see *Ortiz*, 562 U.S. at 188 (citing *Mitchell*, 472 U.S. at 530). But not always.

An interlocutory order denying qualified immunity does not constitute a final decision on the defendant's right not to stand trial when the district court denies summary judgment on the ground that factual disputes exist which prevent the resolution of the qualified immunity defense, see *Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010)—just like the district court did here. The law is clear that such an order is not immediately appealable under the collateral order doctrine. See *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995) (an order denying qualified immunity cannot be appealed "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial"); *Gutierrez v. Kermon*, 722 F.3d 1003, 1009 (7th Cir. 2013) ("[W]e do not have jurisdiction to review an order denying qualified immunity on summary judgment if the issue on appeal is whether the record contains sufficient evidence to create a 'genuine' issue of material fact."). Indeed, "[i]f the denial of qualified immunity turns on factual rather than legal questions, the denial is not properly subject to appellate jurisdiction under the collateral order doctrine because the decision is not 'final.'" *Levan*, 604 F.3d at 369 (quotation omitted).

The law is also clear that an appellate court reviewing such an order may not "reconsider the district court's determination that certain genuine issues of fact exist," or "make conclusions about which facts the parties ultimately might be able to establish at trial." *Gant*, 924 F.3d at 448 (quoting *McKinney v. Duplain*, 463 F.3d 679, 688 (7th Cir. 2006)). To establish appellate jurisdiction, then, the appellant must raise "a purely legal argument that does not depend on disputed facts." *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007); see *Gant*, 924 F.3d at 448 (reiterating that an order denying qualified immunity can be appealed only "to the extent that it turns on an issue of law" (quoting *Mitchell*, 472 U.S. at 530)). This means that an appellant who is challenging a district court's denial of qualified immunity "must accept the facts and reasonable inferences favorable to the plaintiff or the facts assumed by the district court's decision." *Gant*, 924 F.3d at 449. Put differently, appellate jurisdiction is improper when the appellant's otherwise appealable legal argument is "dependent upon, and inseparable from, disputed facts." *White*, 509 F.3d at 835; see *Gutierrez*, 722 F.3d at 1010 (cautioning that an appellant "effectively pleads himself out of court by interposing disputed factual issues in his [legal] argument").

There is, however, one "narrow, pragmatic exception" that allows an appellant to challenge the district court's determination that genuine issues of fact exist: when a video of the incident "utterly discredit[s]" the district court's finding that a genuine factual dispute prevents the resolution of the defendant's qualified immunity defense on summary judgment. *Gant*, 924 F.3d at 449 (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Our jurisdiction in this case therefore depends on whether the dashcam video utterly discredits the district court's finding that one view of the video supports that

Ferguson was not actively resisting arrest when Officer McDonough tased him. A few cases instruct our inquiry.

In *Scott v. Harris*, the plaintiff was a fleeing motorist who brought a § 1983 suit alleging that a police officer used excessive force against him when the officer stopped him from fleeing by ramming his car from behind. 550 U.S. at 374. This conduct caused the plaintiff to lose control of his car, which overturned and crashed, resulting in serious injuries. *Id.* at 375. The district court denied the officer's motion for summary judgment based on qualified immunity after determining that a factual dispute existed over whether the plaintiff was driving in a way that endangered others. See *id.* at 378, 380. The Supreme Court reversed. *Id.* at 376. It found that the plaintiff's version of events, which the district court adopted, was utterly discredited by a video that showed the plaintiff was "driving erratically during a high-speed chase," contrary to testimony that he was "driving carefully." *Gant*, 924 F.3d at 449 (discussing *Scott*, 550 U.S. at 380–84). The Court accordingly had jurisdiction to review the district court's interlocutory order denying qualified immunity as the video "was irrefutable evidence that [the plaintiff] 'posed an actual and imminent threat to the lives' of others." *Id.* (quoting *Scott*, 550 U.S. at 383–84). "[I]n light of that incontestable fact," the Court held that the police officer used reasonable force to stop the plaintiff "as a matter of pure law," and thus was entitled to qualified immunity. *Id.* (quoting *Scott*, 550 U.S. at 383–84).

This court in *Dockery v. Blackburn* similarly reversed the district court's interlocutory order denying officers qualified immunity at summary judgment based on "irrefutable facts" preserved on a booking-room video recording. 911 F.3d at 461. The plaintiff was arrested after a domestic dispute and

became confrontational with two officers who were finger-printing him during the booking process. *Id.* at 461. In response, the officers attempted to handcuff him to a bench; things escalated from there, and the officers managed to handcuff the plaintiff after deploying a taser at him four times. *Id.* The plaintiff subsequently sued the officers for excessive force, and the district court denied the officers' claim for qualified immunity after construing the facts in the plaintiff's favor. *Id.* The plaintiff testified that he did not intend to resist the officers, but on appeal, this court concluded that the booking video utterly discredited his version of events. *Id.* at 466. According to the court, the video "plainly showed that [the plaintiff] was 'uncooperative and physically aggressive' toward the officers and 'wildly kicked' in their direction as they attempted to handcuff him." *Gant*, 924 F.3d at 449 (quoting *Dockery*, 911 F.3d at 467). Under these circumstances, the court determined it had jurisdiction to review the interlocutory denial of qualified immunity. *Dockery*, 911 F.3d at 467. And in light of the uncontested fact that the plaintiff was physically aggressive (as shown by the video), the court held that the officers used reasonable force in tasing the plaintiff, entitling them to qualified immunity. *Id.*

B

We have carefully reviewed Officer McDonough's dashcam video and have determined that this case is not like *Scott* and *Dockery* because the dashcam video of Ferguson's arrest does not utterly discredit the district court's finding that a genuine issue of fact exists as to whether Ferguson was actively resisting arrest when Officer McDonough tased him. Portions of the video are clear, but the rest is open to interpretation, as the district court found. See *Gant*, 924 F.3d at 449–50

(explaining that the narrow video exception "applies only in the rare case" and "does not apply where the video record is subject to reasonable dispute").

Here, the video begins with Officer McDonough following Ferguson in his patrol vehicle, without any lights activated, after Ferguson coincidentally drives by. After making a few turns, he pulls up behind Ferguson as Ferguson parks his car on the side of the road on a residential street. Right as Ferguson opens his car door and begins to step out of his car, Officer McDonough activates his lights and starts shouting at Ferguson from inside his patrol car to "stay in the car!" Officer McDonough repeats his command once Ferguson is completely out of the car, at which time Ferguson looks in Officer McDonough's direction, shuts the car door behind him, and appears to say something (what Ferguson says is inaudible). Officer McDonough responds, "Yeah you. Get back in the car." Officer McDonough utters these words while approaching Ferguson, who is several steps away; Ferguson meanwhile stands stationary in the street just beside his car's driver's-side door where he had exited. Ferguson is fully clothed, wearing a hat, a white t-shirt with an unzipped hoodie over it, and loose-fitting, long pants.

It is not obvious what happens next. As Officer McDonough gets closer to Ferguson, Ferguson again states something inaudible, and Officer McDonough responds, "Alright well then you're under arrest then." Officer McDonough then puts his right hand on Ferguson's left arm while facing him and pushes Ferguson back towards his car. He next spins Ferguson around so that he is directly up against and facing the car, and Officer McDonough tells him to put his hands behind his back. As Officer McDonough goes to grab Ferguson's

hands to handcuff them, Ferguson turns his head to the right and asks, "Why am I under arrest though?" At the same time, Officer McDonough grabs hold of Ferguson's right hand while Ferguson lifts his left hand up above the car as Officer McDonough tries to grasp it. Officer McDonough tells Ferguson, "Don't resist, don't resist," and then pulls Ferguson's left arm back down behind his back while pushing him up against the car.

A tussle occurs next, but much of what happens is unclear. Ferguson and Officer McDonough stumble to the right towards the back end of the car. Officer McDonough struggles to handcuff Ferguson, who is moving, but it is hard to tell from the video why he is moving—it could be because Ferguson is trying to escape Officer McDonough's grasp, is falling over from being pushed, is tripping over his pants that were sliding down, or some other reason. A few seconds pass and Officer McDonough states, "Get over here," and pushes Ferguson's torso down towards the street over Officer McDonough's leg. As Ferguson is hunched over Officer McDonough's leg with his head near his feet, Officer McDonough pulls Ferguson's hoodie, t-shirt, and hat off over his head. Once Officer McDonough discards these clothing items, no more than three seconds pass before Ferguson stands up, leans away from Officer McDonough, and raises his hands in front of him. His back is against his car, his hands are open, and his pants are at his knees. In the same three seconds, Ferguson says something (that is again inaudible) and Officer McDonough steps a few feet back while facing Ferguson, grabs his taser, looks in Ferguson's direction, and then deploys his taser at Ferguson's chest area once:



Ferguson immediately falls to the ground and another officer enters the video screen for the first time to help Officer McDonough finish handcuffing Ferguson.

The video does not utterly discredit the district court's holding that a reasonable jury could find, consistent with Ferguson's version of events, that Ferguson was not actively resisting when Officer McDonough tased him, and thus a reasonable jury could conclude that Officer McDonough's use of the taser was objectively unreasonable under these circumstances. Officer McDonough suggests that Ferguson was actively resisting in this moment because it is "undisputed and can be seen clearly on the squad video" that "Ferguson continued to argue while also partially raising his hands." Appellant's Br. at 7. Not only is that a disputed fact, see R. 54 at ¶ 42 (Ferguson testifying that he wasn't arguing), but we cannot make out precisely what Ferguson says at this moment, so we disagree that the video shows indisputably that Ferguson was

arguing when Officer McDonough tased him. Even if we accept that Ferguson was verbally arguing with Officer McDonough at the moment of tasing, that fact would still not utterly discredit the district court's finding that one view of the video favorable to Ferguson supports that he was not actively resisting when Officer McDonough tased him. Cf. *Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016) (finding facts supported that an individual who did not obey a command to get on the ground was not actively resisting arrest because there was evidence that the individual was not fleeing, was not exhibiting any aggressive behavior, and was surrendering with "his hands in full view over his head").

Officer McDonough argues that Ferguson was actively resisting at some point before Officer McDonough deployed the taser, and that is enough to justify his use of the taser and qualify him for immunity. But active resistance at some point prior to an officer's deployment of force does not necessarily make the use of such force reasonable under the circumstances if the suspect is passively resisting when force is deployed. It is unreasonable for an officer to use significant force against a passively resisting suspect "notwithstanding [the] suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014); see also *Strand v. Minchuk*, 910 F.3d 909, 911–12 (7th Cir. 2018) (holding that the district court did not err in denying qualified immunity to a police officer at summary judgment because a material question of fact existed as to whether an arrestee continued to pose a threat to the officer "at the exact moment the officer fired the shot"). Here, the district court held that the determination of whether Officer McDonough's use of the taser was objectively reasonable under the circumstances

depended on disputed facts, and the video does not utterly discredit the district court's finding.[1] If the district court had held or if the video conclusively established that Ferguson was actively resisting in the moment Officer McDonough tased him, then we would have appellate jurisdiction because the question of whether Officer McDonough's actions were objectively reasonable would be a pure question of law to be resolved on undisputed facts. But those are not the circumstances here.

Because Officer McDonough's arguments ask us to resolve disputed issues of fact and the dashcam video does not utterly discredit the district court's findings, we lack jurisdiction over this interlocutory appeal. The appeal is DISMISSED.

We note in closing that although the district court found that the summary judgment record left factual issues unresolved, precluding a ruling on qualified immunity at that stage of the case, this finding does not foreclose the

---

[1] Officer McDonough also argues that even if he violated Ferguson's Fourth Amendment right when he tased Ferguson, that right was not clearly established on the date the tasing incident occurred. But to decide this question in Officer McDonough's favor, we would first have to find that the video utterly discredits the district court's finding of disputed facts, which, as explained above, we will not do. See *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him."); *Gant*, 924 F.3d at 451 ("Officer Hartman claims that he is entitled to qualified immunity because his actions did not violate Gant's constitutional rights and, even if they did, those rights were not clearly established on or before August 23, 2015. To make this argument, however, Officer Hartman asks in effect that we resolve facts that the district court treated as disputed."). So we leave that issue for another day.

availability of qualified immunity to Officer McDonough at trial. See *Strand*, 910 F.3d at 918. At trial, a jury may resolve disputed facts in Officer McDonough's favor, and the district court could then determine he is entitled to qualified immunity as a matter of law. *Id.*; see also *Taylor v. City of Milford*, — F.4th —, 2021 WL 3673235, at *9 (7th Cir. 2021) (suggesting use of special verdict form at trial to resolve factual disputes necessary to determine qualified immunity).